Richmond.

HUGHES AND ALS. v. HARVEY AND ALS.

January 20.

1. As the law now stands a cause may be heard upon a commissioner's report after it shall have been returned ten days before the cause is taken up and heard; and whether the ten days have elapsed before the commencement of the term of the court is altogether immaterial. Code of 1873, ch. 171, § 10, p. 1105.

2. W, the widow of J, is in possession of a tract of land as her dower, and she and the heirs of J enter into a written agreement by which the land so in possession of W is to be sold and the proceeds invested in another tract about to be sold by a commissioner, to be held by W for her life as she holds the dower land. This agreement is carried out, the one tract is sold and the proceeds of sale invested in the other. HELD: As against the creditors of M, she has but a life estate in the land purchased to the extent that it was paid for by the proceeds of the sale of the dower tract.

3. In this case if M paid the balance of the purchase money of the land bought, by money in her hands as guardian of her daughter, to that extent the daughter is entitled to the land as against the creditors of M.

4. W was the agent of the widow and the heirs in making out the agreement; he was the commissioner to sell the dower land, and the decree directed him to pay the proceeds to M upon her giving bond to refund the money at her death; and he was the surety of M as guardian of her daughter. J was the counsel employed in both cases, and was the commissioner to sell the land which M and the heirs proposed to buy, and he reported the sale to M, and her payment of the purchase money, and there was a decree directing him to convey the land to M without any reference to the agreement; but J died without conveying the land, and the agreement was lost. HELD: It was competent to prove the agreement, and that the purchase and payment were made in pursuance of it, and T was a competent witness to prove it.

This was a suit in equity in the circuit court of Prince Edward county, brought in January, 1871, by William T. Harvey against Mary M. Hughes, to subject the estate of the said Mary M. Hughes to satisfy a judgment for $461.28, with interest and costs, which he had recovered against Moses T. Hughes and the said Mary M. Hughes. In his bill, after setting out the judgment which he says was rendered in 1866, he says that he caused an execution to be issued upon it in January, 1870, against the effects of Mary M. Hughes—Moses T. Hughes being a non-resident of the county—and whilst the said suit was in the hands of the sheriff, Mary M. Hughes filed with him an inventory on oath of her property, and claimed to have her homestead set apart for her. That this was done, and the property was valued at $2,904.75; and the sheriff then made a return on the execution that "after assigning a homestead to Mary M. Hughes there is no effects." And he files a copy of the appraisement.

He further says that in the schedule of the property rendered by Mary M. Hughes as aforesaid, she included three hundred and thirty acres of land which she professed to own in fee simple. Complainant is advised, however, believes, and therefore charges, that in fact and in truth, she has only a right of dower in the large portion of said real estate, and that she owns about one-fourth of the said land in fee simple, the large portion thereof having been paid with money arising from the sale of the land assigned to her as dower in the estate of her late husband John Hughes.

He further says that if the said Mary M. Hughes is the owner in fee simple of all the land which she accounts for in the inventory filed, there is then land enough to which she is entitled to assign to her a homestead, and to discharge the judgment of the plaintiff; but in either case the rents and profits will not pay his debts in five years.

The prayer of the bill is that the court will decide whether said Mary M. Hughes has any right to a homestead exemption in her real estate upon which plaintiff's judgment created a lien, until said judgment is satisfied; that her interest in said land, or so much as remains after setting aside her homestead, may be sold for the payment of his judgment; or at least to have the whole rented out and the proceeds of such renting be so applied; and for general relief.

In March, 1871, the bill was taken for confessed, and the court made a decree directing a commissioner to take the following accounts: 1st. An account of the liens upon the real estate of the said Mary M. Hughes, with the priorities thereof. 2d. An account of rents, &c. 3d. An account showing what real estate the said Mary M. Hughes has, and what estate or rights she has in the same, and in whom the title to said real estate is vested.

The commissioner returned his report to the September term of the court, 1871. He reported three judgment liens on the lands of Mrs. Hughes: First, that of the plaintiff, $402.02; second, one of Lucy H. Anderson, $195.25; and third, one of the Farmers Bank at Danville, for $334.19—$931.37. Under the third head, he reported 330 acres of land assessed by the last official assessor at $12 per acre, $3,960; by sworn appraisers appointed by Prince Edward county judge for the setting aside her homestead therein, at $8—$2,640. Estimated annual value of land, $150.

The commissioner reports that he can nowhere find any deed to the said Hughes for said land; though he finds a decree of the circuit court of Prince Edward, rendered in the suit of *Foreman* v. *Lacy*, &c., directing John T. Thornton, as special commissioner of said court, to make a deed to her therefor. And it also appears from the papers in that cause and the report of said commissioner, who had previously sold the land by order of the court, that the whole

purchase money for said land had been paid. And she is now entitled at the hands of the court to a deed.

The cause came on to be heard on the 22d of September, 1871, when the court confirmed the report, to which there was no exception, and made a decree directing commissioners named, after advertising, &c., to sell such title and interest as the defendant Mary M. Hughes has in the land in the proceedings mentioned, on a credit of one, two and three years, &c.

In December, 1871, before the sale of the land was made, Mary M. Hughes applied to the court by petition for a rehearing of the decree for the sale of the land, and to enjoin the sale. In her petition she stated several grounds for the rehearing of the decree; but the only one which it is necessary to state is, that the tract of three hundred and thirty acres of land which was decreed to be sold, had been purchased under a written agreement between herself and the adult heirs of her late husband, John Hughes, by which a tract of one hundred and sixty-five acres, which had been devised to her for life as her dower, by the said John Hughes, should be sold and the proceeds of sale invested in this tract of three hundred and thirty acres, which was then about to be sold by John T. Thornton as commissioner, under the decree of the court in the case of *Foreman* v. *Lacy*, then depending therein; which was to be held by her for her life in lieu of the tract sold. That in pursuance of this agreement in a suit instituted by the parties, a decree was made for the sale of the land, and a sale was made for the sum of $2,416.50; the tract of three hundred and thirty acres was purchased, and the said sum of $2,416.50 was applied to its payment, and the balance was paid by her out of moneys held by her as guardian of her daughter Sarah Hughes.

The court granted the injunction, and directed that the heirs of John Hughes should be made parties, and should

answer the petition, and also the bill of Harvey. These heirs accordingly answered, concurring in the statements of the petition as to the agreement between Mrs. Hughes and the adult heirs, the suit for a sale of the one hundred and sixty-five acre tract, and the application of the proceeds of the sale to the purchase of the three hundred and thirty acre tract, which by the agreement she was to hold for her life in lieu of the tract sold.

The important question in the cause was as to the interest of Mrs. Hughes in this tract of three hundred and thirty acres of land. There was no doubt the purchase money was paid by Mrs. Hughes, and there was a decree directing Thornton to convey the land to her; but the question was whether it was paid, as she stated, by applying the proceeds of the sale of the one hundred and sixty-five acre tract to the payment: and this depended upon the testimony of T. T. Tredway. His deposition was objected to by the plaintiff Harvey and the other creditors of Mrs. Hughes, "as it tends to contradict the records of the court in the suit of Foreman v. Lacy, and because it has reference to transactions with John T. Thornton, who is now dead; the deponent being interested in the subject matter of these transactions, as he is bound as surety for Mrs. Hughes on her guardian bond, and is bound by his own bond as commissioner (in the case of Hughes v. Hughes) to pay over the money to Mrs. Hughes, or her order, on her delivery to him of a bond for the forthcoming of the said purchase money at her death; and because it has reference to transactions of which Mrs. Hughes' creditors did not have and could not have any knowledge."

It is impossible to set out at length this deposition. The evidence is sufficiently stated in the opinion of Judge *Staples*.

By consent the cause was decided in vacation, and on the 28th of November, 1874, the court made a decree dissolving

the injunction which had been granted to Mrs. Hughes, and directing that unless, &c., commissioners named should proceed to sell the tract of three hundred and thirty acres of land upon the terms, &c. And thereupon John E. Hughes and the other heirs of John Hughes applied to this court for an appeal; which was awarded.

*C. E. Dabney* and *W. M. Tredway,* for the appellants.

*R. M. Dickinson* and *Meredith & Cocke,* for the appellees.

STAPLES, J., delivered the opinion of the court.

Numerous errors are assigned in the petition for an appeal, some of which are founded upon alleged irregularities in the proceedings, others go to the merits of the case.

None of the objections to the proceedings are well taken, and most of them may be passed by without discussion. There is one, however, which requires a more special consideration. It is insisted that the court below erred in hearing the cause upon the report of a commissioner which had not been returned ten days preceding the term at which the decree was rendered. The case of *Gray* v. *Dickinson's Adm'rs,* 4 Gratt. 87, relied upon by counsel to sustain this position, was based upon the peculiar phraseology of the act of March 9th, 1836. By the terms of that act it was required that a commissioner's report should be returned thirty days *preceding* the term at which the cause was heard. Acts of 1835–36, page 34.

At the revisal of 1869 the law was changed in an important particular. The necessity of returning the commissioner's report before the commencement of the term was dispensed with, and by the act of 1870–1871 ten days were substituted for thirty. Code of 1873, ch. 171, § 10, p. 1105.

As the law now stands, a cause may be heard upon a commissioner's report after it shall have been returned ten days before the cause is taken up and heard; whether the ten days have elapsed before the commencement of the term is altogether immaterial. The reasons for this change in the law are too obvious to require comment. The object was to prevent vexatious delays, and to facilitate the hearing and decisions of chancery causes.

We come now to the merits of the case. The circuit court was of opinion that the land in controversy is the property of Mrs. Mary Hughes in fee simple, and as such is liable to her debts.

On the other hand, the appellants claim that the land was purchased in part with the proceeds of the sale of Mrs. Hughes' dower land, and in part with funds in her hands as guardian for her infant daughter Sarah Hughes; and as Mrs. Hughes only had a life estate in the dower land, she has the same limited interest in the land in controversy, the reversion being in the appellants, the heirs or devisees of John Hughes, deceased; and with respect to so much of the tract as was purchased with the funds of Sarah Hughes, Mrs. Hughes has no interest which is liable to the claims of her creditors.

The evidence mainly relied upon is that of Mr. T. T. Tredway, who is objected to by the appellees as an incompetent witness. It is insisted that he is one of the sureties of Mrs. Hughes, upon her bond as guardian, and directly interested in the suit. That as the agent of Mrs. Hughes he purchased the land from Colonel Thornton, who was the commisioner and agent of the court, and Colonel Thornton being dead, Treadway is, under the statute, incompetent.

This argument of the appellees' counsel is based upon a misconception of the real point of controversy. It is not denied that the proceeds of the sale of the dower tract were invested in the land in dispute.

The real matter of intention is, whether they were so invested with the understanding that the purchased tract should take the place of the dower land, and Mrs. Hughes should have only a life estate in the one as she had in the other, or whether she should have a fee simple interest in the substituted tract. Whatever may have been the agreement, it was between the owners of the property—Mrs. Hughes, the life tenant, on the one hand, and the reversioners on the other. It was to this agreement the witness (Tredway) was called to testify, and it is this which is the subject of investigation and controversy.

Col. Thornton was employed as counsel to obtain a decree for the sale of the dower land, and he was also the counsel in another suit who made sale of the land purchased by Mrs. Hughes, and which is involved in this controversy. Beyond this he had no sort of connection with the transaction, and no interest in it. No claim is asserted against him or any of the parties he represented as commissioner. He was, therefore, in no sense a party to the contract or transaction which is the subject of investigation. The case of *Parent's Adm'r* v. *Spitler's Adm'r*, 30 Grat. 819, 823, has no bearing on this case. There one of the commissioners who made the sale and took the bonds of the purchasers was dead. Two of the sureties on these bonds were offered as witnesses to prove that the purchase money was tendered to the commissioner and accepted by him. The estate of the commissioner was, of course, directly interested in the matter, and this court held the sureties incompetent.

This simple statement is sufficient to show that there is no sort of similarity between that case and the one under consideration. We are of opinion that the witness is clearly competent to testify in behalf of the appellants.

It is not necessary to go into a minute examination of Mr. Tredway's testimony. He proves beyond question the agreement between Mrs. Hughes and her children that the

dower land should be sold and the proceeds invested in what was known as the Rice tract—the subject of controversy here; and that to the extent of such proceeds the Rice tract should take the place of the dower land, and this agreement was reduced to writing, signed by the parties, and left with Col. Thornton, the commissioner, to be his guide in making his report and in executing the deed. That the dower land was accordingly sold and the proceeds applied *pro tanto* to the payment of the purchase money for the Rice land.

It must be remembered, however, that Mr. Tredway does not say that Mrs. Hughes also used her infant daughter's money in making the payments; he merely says that the proceeds of the dower land completed the payment of the Rice land, except about $800, which was paid by Mrs. Hughes herself. Where this money came from the witness does not state. It is repeatedly averred in the record that it belonged to Sarah Hughes, an infant daughter, of whom Mrs. Hughes was guardian.

At present it is not necessary to express any opinion on the subject. With respect to the investment of the proceeds of the dower land in the Rice land, and all the facts and circumstances attending the transaction, we see no good reason for discrediting the evidence of Mr. Tredway. His narrative seems to be accurate and truthful in every material particular. He is fully sustained by the original bill filed in this case on behalf of the principal creditor, William T. Harvey. In that bill are the following averments:

" Your complainant would further show unto your honor, that in the schedule of her property, rendered by the said Mary M. Hughes to the sheriff aforesaid, she included in said schedule 330 acres of land, which she professed to own in fee simple.

" Your complainant is advised, however, believes, and therefore charges, that in fact and in truth, she has only a

right of dower in the large portion of said real estate, and that she owns only about one-fourth of the said land in fee simple, the large portion thereof having been paid for with money arising from the sale of the land assigned to her as dower in the estate of her late husband John Hughes, deceased."

These most material allegations or admissions made in the outset by one of the appellees, are not seriously contradicted or attempted to be explained by the appellees.

Under these circumstances, it can scarcely be supposed that the court will treat the testimony of the appellants' witness as unworthy of credit.

It has been said that the effect of this testimony is to set up a secret trust in opposition to the records of the court, and in opposition to Mrs. Hughes' apparent ownership of the property in fee.

In considering this objection the first inquiry is, how far the case comes within the operation of the registry acts.

Those acts provide that every contract in writing relating to real estate, and every conveyance of real estate, shall be void as to creditors, &c., unless duly admitted to record. The creditors referred to in this section are of course creditors of the grantor, or creditors who but for the deed would have the right to subject the property to their claims. The only creditors complaining here are the creditors of Mrs. Hughes. As to them, any contract of sale or deed of conveyance made by her of her property would be void unless duly recorded.

But the sale or conveyance made to her would stand upon different grounds. Such a sale or deed, as far as her creditors are concerned, is in no wise affected by the circumstance that it is or is not recorded. It is equally clear that the registry acts have no application to the proceedings and decrees under which Mrs. Hughes became the ostensible purchaser of the land in controversy. Upon this

point the case of *Briscoe* v. *Ashby and als.*, 24 Gratt. 454, is a decisive authority, and renders wholly unnecessary any discussion of this branch of the case.

The only ground upon which the appellants can make even the semblance of a case is that of equitable estoppel. In other words, the fraud or gross negligence of the heirs in permitting Mrs. Hughes to remain so long in possession of the land, and to be held out to the world as purchaser and owner, ought to estop them from claiming title as against the appellees, who gave her credit upon the faith of such apparent ownership.

Now, if this was a controversy between the reversioners on the one hand, and a purchaser from Mrs Hughes for valuable consideration on the other, it is very questionable whether the latter could thereby obtain a valid title to the property, for the simple reason that Mfs. Hughes never having received a conveyance, a purchaser from her would be the owner of a mere equity, and as such he could occupy no higher ground than she does, and must stand or fall by her title.

The rules respecting purchasers without notice are framed for the protection of those who purchase the legal title and pay the purchase money in ignorance of an outstanding equity.

But whatever may be the rights of a purchaser from Mrs. Hughes, her creditors must stand in her shoes. Unless the case can be brought within the operation of the registry act, the creditor can acquire no better right to the estate than the debtor himself has.

He has no equity whatever beyond that of the debtor, and a court of chancery will limit the lien of the judgment accordingly. *Floyd, Trustee* v. *Harding and als.*, 28 Gratt. 401; *Borst* v. *Nalle and als.*, 28 Gratt. 423.

We do not mean to say that there may not be cases in which the true owner of an estate might be estopped to

Hughes and als. v. Harvey and als.

assert his title, against one who gave credit to the party in possession clothed with all the indicia of ownership.   But is this such a case ?   There is not in the record either proof or even an averment of the appellees that they trusted Mrs. Hughes under the impression that she was the fee simple owner of the property in controversy.   One of them (Mrs. Lucy Anderson) has proved her debt before the commissioner, but she has taken no further part in the controversy. There is a paper in the record purporting to be the answer of the trustees of the Farmers Bank and of William T. Harvey, but it is not sworn to by either of them, nor is it even signed by any one except the counsel who prepared it.

In this paper it is averred in a general way that the respondends have given credit to Mrs. Hughes upon the faith of her apparent ownership of the land.   Such an averment, even though made by the trustees, is entitled to but little weight, because the debt to the Farmers Bank was contracted in 1861, and the trustees were appointed in 1866 or 1867, when the bank made an assignment for the benefit of its creditors.

So far as the other creditor, William T. Harvey, is concerned, it has already been seen that when he filed his bill against Mrs. Hughes he expressly averred that she had only a life interest in the property, and this averment remains uncontradicted and unexplained.

The appellees have proved their debts, but they have offered no proof direct or circumstantial that they gave Mrs. Hughes credit because they believed at the time that she was the owner of the fee, or even that it was so represented to them, or that she ever claimed to be such owner.

Nor is there any thing in the record to convict the appellants of misconduct, or even negligence with respect to the property in controversy.   They were not parties to the suit in which Colonel Thornton was appointed commissioner. It does not appear, it is not even charged, that they were

informed of the nature of the report made by the commissioner, or the nature of the decree that was entered.

The agreement with their mother was reduced to writing, was placed in the hands of Colonel Thornton that he might embody it in his report and in the deed to be executed to Mrs. Hughes.

His failure to state the facts in his report was the result of mere inadvertance or mistake. For when his attention was afterwards called to the matter by Mr. Tredway, he determined at once not to execute any deed to Mrs. Hughes, and none has ever been executed to this day.

No presumption unfavorable to the appellants can be drawn from Mrs. Hughes' long continued possession of the land, because as tenant for life she was entitled to hold against the appellees and all other persons. Her possession was not adverse but consistent with her title and with that of the reversioners.

It will thus be seen that the case, as made out by the proofs and pleadings, is lacking in every essential element of an equitable estoppel.

The principle of such an estoppel is where one man, by the neglect of some duty, leads another to believe in the existence of a certain state of facts, and under this belief the latter does an act whereby he is prejudiced. The former will not be permitted to show, as against the latter, that the state of facts did not exist. But in all such cases the negligent conduct should be in respect to some duty cast upon the party; should be a proximate and necessary cause of the transaction, and the persons relying upon the transaction should believe that it is true.

For these reasons we are of opinion that the appellants are entitled to the reversionary interest in the land, to the extent that the proceeds of the dower land were invested in it, which, according to the testimony of Mr. Tredway, constitute the whole amount of the purchase money except about $800.

Hughes and als. v. Harvey and als.

There is strong reason to believe that this $800 was money in the hands of Mrs. Hughes as guardian of her infant daughter, although there is no positive proof of the fact.

It would, however, be premature to pass upon this question in the present state of the record. There ought to be further inquiry on the subject. If upon such inquiry it shall appear that the funds of the daughter were used in paying the purchase money for the land in controversy, she has her election, upon the most familiar principles, to follow the trust and claim the benefit of the investment.

Whatever interest Mrs. Hughes may have is of course subject to the claims of her creditors.

The decree of the circuit court is therefore reversed, and the case remanded to the circuit court, that inquiries may be made and a final decree entered in conformity with the views herein expressed.

The decree was as follows:

The court is of opinion, for reasons stated in writing and filed with the record, that the proceeds of the sale of Mrs. Mary M. Hughes' dower land were invested in the purchase of the tract of land in controversy, known as the Rice tract, and to that extent she is entitled to a life estate in said Rice tract, subject to the lien of the appellees' judgments, and the appellants are entitled to the reversion in fee. The circuit court, therefore, erred by its decree of the 28th November, 1874, in holding that said tract of land is the property in fee simple of the said Mary M. Hughes, and as such liable to her debts. It is, therefore, decreed and ordered that said decree be reversed and annulled, and that the appellees, William T. Harvey, and J. M. Goddin and S. C. Robinson, trustees of the Farmers Bank of Virginia, out of any funds in their hands, as such trustees, or under con-

trol of the court belonging to the said bank, do pay to the appellants their costs by them expended in the prosecution of their appeal here.

The court is further of opinion that it does not sufficiently appear whether the sum of eight hundred dollars or whatever amount was invested by Mrs. Hughes in the Rice tract over and above the proceeds of the dower land, was the individual money of Mrs. Hughes, or was held by her as guardian for her infant daughter; and there ought to be further inquiry on these points; and if upon such inquiry it shall appear that said sum of money was held by Mrs. Hughes as a trust fund for her said daughter, the latter has the right to hold said tract of land liable to the extent of such investment.

The court is further of opinion that if desired by any of the parties, further inquiry shall be directed with a view to ascertain whether the judgment in favor of Lucy H. Anderson, or any part thereof, has been paid, and whether the rents and profits of the land subject to the appellees' judgment liens will discharge the same within five years.

DECREE REVERSED.