Syllabus.

## Richmond.

MERCANTILE CO-OPERATIVE BANK v. BROWN AND OTHERS.

JANUARY 12, 1899.

Absent, Cardwell, J.

1. DEEDS—*Admission to Record—Attempt to Recall.*—The admission of a deed to record has the same effect as if the deed were actually spread on the deed book, and a clerk who has once duly admitted a deed to record has no more power to recall his act than he would have to strike from the deed book a deed duly engrossed thereon.

2. DEEDS—*Admission to Record—Direction not to Record—Second Deed on Same Property—Estoppel.*—A deed of trust to secure a debt was duly admitted to record by the proper clerk and so endorsed by the clerk, and the creditor secured was notified of that fact by his attorney, but before it was actually engrossed on the deed book the attorney instructed the clerk not to record it till further ordered.  Ten days before such further orders were given a second deed of trust on the same property, securing a different creditor, was duly recorded.  After the first deed was recorded, the date of the former endorsement was erased, and the date of its actual record was endorsed thereon, and it was forwarded to the creditor secured.  A year or more after the first deed, with the endorsements thereon, was delivered to the creditor secured thereby, the creditor secured by the second deed assigned his debt to a third party for value received of him.  The creditor secured by the first deed took no steps, prior to said assignment, to have the date of the recordation of his deed corrected.

   HELD : The endorsement on the first deed of trust was notice to the creditor secured of the date when his deed purported to have been admitted to record, and, having taken no steps to have the record corrected, he is estopped to assert his lien as against the assignees of the debt secured by the second deed, and they take priority over him.

3. ESTOPPEL—*Knowledge of Truth Generally Essential—Exception to General Rule.*—Generally, actual knowledge of the truth as to the material facts represented or concealed is indispensable to the application of the doc-

trine of equitable estoppel, but such knowledge is not indispensable where the circumstances are such that a knowledge of the truth is necessarily imputed to the party sought to be estopped ; nor where he has neglected to perform some duty whereby another has been misled to his injury, or prejudice.   Where one man, by the neglect of some duty, leads another to believe in the existence of certain facts, and, under this belief, to do an act to his prejudice, the former will not, as against the latter, be heard to deny the existence of such facts.

Appeal from a decree of the Circuit Court of Page county pronounced May 6, 1898, in a suit in chancery wherein the appellant, suing on behalf of itself and of all other lien creditors of J. .P. Brown was the complainant, and the appellees were the defendants.

*Affirmed.*

The original bill was a simple lien creditor's bill.   After it was filed, however, the complainant discovered that the deed of trust under which it claimed had been duly admitted to record on March 13, 1891, but that R. S. Parks, who had examined the title to the property for the complainant, prepared the deed and delivered it to the clerk for recordation, had instructed the clerk a day or two afterwards not to spread the deed on record until further directed by him, and that the clerk thereupon erased the endorsement on the deed showing its admission to record, and that such further direction had not been given till June 23, 1891, when the same was again admitted to record, and spread on the deed book ; and that, in the meantime, Brown had given another deed of trust which was dated and admitted to record June 10, 1891.   Thereupon the complainant filed an amended and supplemental bill, charging that the action of the clerk in erasing the endorsement on the deed, and failing to spread the same on the record, was without authority, and that its lien dated from March 13, 1891, and took priority over the creditor secured by deed of June 10, 1891.   The case was referred to a commissioner to take an account of liens, and their priorities.   The commissioner reported in favor of the deed of June 10, 1891.   Exceptions were

filed to the report of the commissioner by the complainant, but they were overruled, and the report confirmed. The depositions taken before the commissioner were returned with the report. The chief controversy was over the question whether Parks had any authority to represent the bank in having the deed withheld from the record. Parks, who was examined as a witness on behalf of the defendant, insisted that he had, and the appellant that he had not. Parks testified that the bank (appellant) had a local organization at the town of Shenandoah, in Page county; that he was local counsel for it in that county; that he examined the title, drew the deed, delivered the check to Brown, and the deed to the clerk to be recorded, and that he afterwards directed the clerk not to spread the deed on record until further ordered; that at that time he "had no professional connection with any one in the transactions named except the said bank;" that, in directing the deed to be withheld, he was acting for the bank, and that he believed he was acting within the scope of his authority as local counsel for the bank. He further states that he was retained as local counsel for the bank by "an agent of the bank who had established a local organization at Shenandoah, who came to see me (him) in person." He further states: "My fee had been paid, but I was still counsel for the bank, and communicated with them as attorney upon two or three occasions after that; I mean, after the time at which I asked the clerk not to record the deed." When asked for an explanation of the long delay in putting the deed to record he says: "There is no explanation to give, except to say frankly that I forgot it."

The president of the bank testifies that Parks was simply employed, as any other attorney might be, to examine the title to the property and prepare the deed, and that when the check was turned over to Brown, and the deed delivered to the clerk to be recorded, and his fees and the tax paid, Parks' powers and duties were at an end; and that no agent of the bank had power or authority to employ local counsel. He made the fol-

lowing statement as to the agents employed in Virginia, and the character of the local organizations :

"*Ques.* What sort of an agent did the bank, in the year 1891, or at any other time, have in Luray, or Shenandoah, or in the State of Virginia ?

"*Answer.* The only agent that this bank had was a person authorized to obtain subsciptions to the stock of the bank upon conditions and terms expressly stated in printed forms of subscription to the bank. In these printed forms, and in all the literature of the bank, it was expressly stated that such agent had no power to incur any liability on the part of the bank, or to appoint any officers or agents of the banks.

"*Ques.* What local organization, if any, did the bank have in 1891, at Shenandoah, Virginia ?

"*Answer.* The bank had what was called a local advisory branch—this was one of a number of similar advisory branches which the bank had established throughout the country—such a local advisory branch was made up of the shareholders residing in any one locality—such shareholders elected what was called an advisory board, the sole function of which was to advise the bank at the New York home office, as to the safety of any application for a loan made by any member of the local branch. The security offered by the applicant was appraised by the advisory board, and the application for loan had to be recommended by such advisory board, before it would be considered at all by the home office in New York. All applications for loans had to be passed upon and approved by the Loan Department and Executive Office of the bank in New York, and the title had to be approved by the counsel of the bank at the home office. The local branches were entirely of an advisory character, and had no power to bind the bank in any way; they were organized for the purpose of bringing the shareholders in closer touch with each other, and thereby serve to increase the business of the bank."

In Parks' letter of February 3, 1891, filed as an exhibit with

the amended bill, he says: "If you send the check to me I will see that deed is properly recorded, and forward you the deed and note, and in all respects see that your interests are fully protected."

On March 13, 1891, Parks addressed the following letter to the bank, which is filed as an exhibit with its amended bill:

Luray, Va., March 13, 1891.

To the Mercantile Co-op. Bank:

Gent.,—Yours with enclosure to hand. Mr. Brown was here to-day; .the transfers on policy were made, deed admitted to record, and check delivered. As soon as deed is transcribed in record, which will be in a few days, I will forward deed. Note policy and abstract brought down to date of admission of trust deed to record. Brown tells me that the branch at Shenandoah is *non est.* Should you better not send an agent down? Perhaps a reorganization can be had. If not, to whom must Brown pay his dues etc. Please answer.

Truly, etc.,

RICH. S. PARKS.

No further correspondence seems to have taken place between the parties.

The other facts sufficiently appear in the opinion of the court.

*Sipe & Harris*, for the appellant.

*J. S. Harnsberger*, for the appellees.

Riely, J., delivered the opinion of the court.

The appellee, J. P. Brown, applied to the Mercantile Co-operative Bank, of the city of New York, for the loan of $1,000, which he offered to secure by deed of trust on a certain lot in the town of Shenandoah, Page county, Va. This the bank agreed to do, if the security offered was sufficient, and the title to it good. It employed Mr. R. S. Parks, an attorney, to ex-

amine the title and furnish an abstract thereof. The security and the title to it proving satisfactory, the bank sent a check for the loan to its attorney, payable to J. P. Brown, but to be held by the attorney until the deed of trust should be executed and acknowledged for record, and received the approval of the bank.

The deed having been approved by the bank and returned to the attorney, the latter, on March 13, 1891, turned over the check to Brown, taking his note for the loan, and delivered the deed to the clerk of the County Court of Page county, in his office, to be recorded.

The deed having been duly executed and acknowledged for record, and the tax and recording fee being paid by the attorney, the clerk then and there admitted it to record, noting the time of its admission by an endorsement on the deed in the following words and figures: "A. R., March 13, 1891." The attorney, on the same day, wrote to the bank that its check had been delivered to Brown, the deed of trust admitted to record, and that as soon as the deed was transcribed upon the record he would forward it.

A few days thereafter the attorney went to the clerk's office and instructed the clerk not to record the deed until he should direct him to do so. This he did at the instance of Brown, who complained of delay in the payment of the check, although the evidence shows that it was paid in New York without delay, four days after it was turned over to him. The deed remained in the clerk's office until the 23d of June following, when the attorney went to the clerk's office and ordered that it be recorded. The deputy clerk thereupon ran his pen through the words and figures, "March 13, 1891," which had been endorsed on the deed at the time it was delivered to the clerk to be recorded, and wrote above them, "June 23, 1891," and the deed was then transcribed in the proper deed book.

Brown, in the meantime, had applied to Lucretia J. Harnsberger for a loan of $1,500 upon the same lot of land. The

title to it was examined by her attorney, and, no encumbrance being disclosed, she made the loan, taking a deed of trust on the said property to secure it, which deed was admitted to record on June 10, 1891.

Which of the said deeds has priority is the first question to be decided, the property being insufficient to pay both of them.

The deed securing the bank being duly executed and properly acknowledged for record, it was the duty of the clerk, upon its delivery to him, on March 13, 1891, with the amount of tax and recording fee, forthwith to admit it to record. This he did, as already shown.

Its admission to record was an official act performed by him, and having been performed, it was not within his power to undo it. He could no more recall his official act admitting it to record, when he was ordered by the attorney to withhold its recordation, than he could have expunged its recordation from the deed book if it had been actually transcribed. When the bank, through its attorney, delivered the deed to the clerk to be recorded, and paid the tax and recording fee, its duty, in order to secure the lien under the deed of trust, was ended. The actual recordation in the deed book was a consequential act from its admission to record, to be performed by the clerk in the order of the admission by him of deeds to record, and as the condition of the business in his office permitted. The bank was entitled to its lien against purchasers and creditors from the time of the admission of the deed to record, and the subsequent act of the clerk, in attempting to change the time of its admission to record, at the request of the attorney was ineffectual, and could not affect the lien then and there acquired by the bank. The lien of its deed of trust, therefore, took effect from March 13, 1891, while that of Lucretia J. Harnsberger only commenced on the 10th day of June, 1891, that being the date of the admission of her deed of trust to record.

But whether the bank, as against the appellees, who are

assignees of the Harnsberger debt, can claim the benefit of its lien as of March 13, 1891, is another question, and is to be solved by the application of other principles. It appears from the evidence that $1,000 of the Harnsberger loan was transferred for value on the 28th day of July, 1893, to George W. Harnsberger, and the residue thereof on the same day to R. A. Bickers; and the assignees contend that the appellant bank having allowed the public record, showing that its deed was not recorded until the 23d of June, 1891, to remain so, without taking any steps to have it corrected, is estopped to claim otherwise as against them, they having relied upon. the recorded title.

The evidence also shows that the deed of trust securing the bank was withdrawn by its attorney, from the clerk's office, on the 11th day of February, 1892, and sent by him to the bank. The bank, therefore, had its deed of trust in its possession nearly eighteen months prior to the assignment of the Harnsberger lien to the appellees. The deed, when received by the bank, had upon it the following official endorsement by the clerk of the County Court of Page county.: "Page county, to-wit: The foregoing deed of trust was received in the clerk's office of Page County Court June 23, 1891, and admitted to record. Test: A. Broaddus, C. C." It thus appears that the bank, from the time of the receipt of its deed of trust, had in its possession the plain means of knowing when its deed of trust purported to have been admitted to record. It showed that it did not purport to have been admitted to record on the 13th of March, 1891, as the bank had been informed by its attorney was the case, but that the record in the clerk's office showed that it was not received in that office and admitted to record until the 23rd of June, 1891. It is true that the president of the bank denies actual notice of this fact until about the time of the institution of this suit in 1896, but, having in his possession the deed itself, with the official certificate of the clerk endorsed thereon as to the time it was admitted to record, knowledge thereof will be imputed to the bank.

Actual knowledge of the truth as to the material facts, represented or concealed, is generally indispensable to the application of the doctrine of equitable estoppel, but like other general rules it has its exceptions.   Actual knowledge is not indispensable where the circumstances are such that a knowledge of the truth is necessarily imputed to the party sought to be estopped; nor where he has been negligent in failing to perform some duty, whereby another has been misled to his injury or prejudice.   2 Pomeroy's Eq. J., secs. 808, 809; Bigelow on Estoppel (5th Ed.), ch. 19; *Hughes* v. *Harvey,* 75 Va. 200, 212; and *Henshaw* v. *Bissell,* 18 Wall. 255.

The bank, instead of taking steps to have the date of the admission of its deed to record and the recordation thereof corrected, in accordance with the facts and its right, permitted the record to stand until the assignees of the Harnsberger loan had for value acquired her debt, and for years afterwards.   It is the policy of the registry law that the evidence of titles should be recorded, and persons dealing with the subject of the recorded title have the right to rely upon the state of the title as it appears upon the public records, and upon the recordation thereof as having been duly made.   It was the duty of the bank, if it would claim the benefit of the true date of the admission of its deed to record, within a reasonable time after the receipt of its deed showing the state of the record, to have taken the proper steps to have it corrected in accordance with the actual fact.   The failure to do so was gross negligence.   By its negligent conduct, the bank thereby represented to the world that the admission of its deed to record, as it appeared upon the public record of titles, was true.   It is now estopped from asserting the contrary.

The doctrine of equitable estoppel has its foundation in natural justice and good conscience.   Where one man by the neglect of some duty leads another to believe in the existence of a certain state of facts, and under this belief the latter does an act whereby he is prejudiced, the former will not be permitted

to show as against the latter that the state of facts did not exist. He shall not by such course cause loss or injury to another. Such a change of position would be unconscientious and inequitable, and is sternly fordidden by honesty and fair dealing. Where one of two innocent persons must suffer a loss, it must be borne by that one of them who by his conduct—acts or omissions—has rendered the injury possible. The neglect of the bank to perform its duty to the public, and have the record of the admission of its deed to record corrected, could but have the effect to mislead purchasers and creditors, and did mislead the assignees of the Harnsberger debt, who innocently relied upon the recorded title. It would be a fraud on them to permit the bank now to deny what, by its omission of duty and acquiescence in the state of the public record, it represented to be true. It is therefore estopped to claim, as against them, that the lien of its deed of trust took effect prior to June 23, 1891.

There is no error in the decree appealed from, and it is therefore affirmed.

KEITH, P., dissenting:

The opinion of the court concedes that the lien of appellant was complete by the recordation of the deed. It concedes that there is no evidence that appellant had actual knowledge of the unauthorized act of the clerk. I am unable to see that there was any duty upon appellant to read or examine the deed of trust when returned to it by the clerk. It had, it is true, the " means of knowing " in the sense that it had the possession of the deed, but, as there was no duty which it owed to appellee to inspect that deed, no wrong can be imputed to it for its failure to do so, and it can, I think, in no proper sense be said that the bank " permitted " the record to remain uncorrected.

I feel constrained to dissent from the opinion of the court.

*Affirmed.*