**SECURITY CONSTRUCTION COMPANY, INC.**

v.

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY.**

Civ. A. No. 74–0304–R.

United States District Court,
E. D. Virginia,
Richmond Division.

July 18, 1975.

William B. Bircher, Fairfax, Va., for plaintiff.

Sands, Anderson Marks & Clarke, Richmond, Va., Edward Gallagher, Washington, D.C., for defendant.

## MEMORANDUM

WARRINER, District Judge.

Plaintiff is a Virginia corporation and defendant is a Pennsylvania corporation. The amount in controversy is in excess of $10,000 and the Court proceeds in this case under diversity jurisdiction.

Plaintiff presents an appealing case. It had the solution to its problems within its grasp but didn't realize it until too late. In January of 1975 Security entered into a general contract for the construction of a 250-unit housing development in Hagerstown, Maryland. In the early part of February 1975, Security engaged Maietta Trucking Company to do preliminary grading and clearing and at the same time Security asked Maietta to bid on the excavation, grading, foundation and other site work contained in Section 2A of the specifications for the project. Pursuant to Maietta's proposal, Security and Maietta entered into a contract for the principal sum of $138,500 on a form prepared and customarily used by Security. The contract form required that Maietta provide a payment and performance bond to assure Security that Maietta's contractual obligations would be performed in accordance with the contract, plan and specifications.

Work under the contract commenced but Maietta did not provide Security with the payment and performance bond. Maietta acquired such a surety bond on 18 March 1971 but for reasons of its own, Maietta informed Security that it was unable to obtain the bond required by the contract.

Though Security, under its contract, then and there had a right to terminate the agreement, it chose to waive the bond requirement and permit Maietta to proceed to perform the work. Unformulated alternate provisions to assure performance were mentioned by Security but none were ever agreed to.

Defendant, Pennsylvania National Mutual and Casualty Insurance Company, from whom Maietta had obtained the surety bond, forwarded to Security under date of 30 March, a "General Form Status Inquiry." The inquiry disclosed that a surety bond number SB–26647 had been issued by Pennsylvania to Maietta effective 18 March 1971, that the bond covered site preparation for

the Hagerstown, Maryland job subcontracted from Security for a contract price of $138,500, and that the bond had been issued in that amount. After giving this information, the inquiry stated:

> Without prejudicing your right or affecting our liability under our bond(s) described above, we would appreciate such of the following information as is now available.

The inquiry then went on to ask certain specific questions about percentage of completion and the like. Security did not answer any of these questions but in the portion of the inquiry reserved for remarks Security, through its Vice-President, answered as follows:

> We have not received the bond which you are referring to (SB–26647) in this office. May we suggest that you have this firm supply us with the executed bond in order that our records will be complete. We will then be in a position to complete this form without further delay.

Security's response was dated 9 April 1971 and was apparently forwarded to defendant Pennsylvania on or shortly after that date.

During the latter part of April, Security reached the conclusion that Maietta's April requisition for percentage payment under the contract was in excess of the percentage of work actually done as of that time, and that if payment were made under the requisition there would be insufficient funds remaining unpaid to complete the job if Maietta were to default.

Although earlier that month Security had received specific information as to the existence of the surety bond, including such information as the name of the obligee, the name of the obligor, the name of the surety, the effective date, the amount of the contract, the amount of the bond, and the project covered by the bond, Security has filed an affidavit herein that it assumed there was no surety bond. This assumption was predicated on Maietta's earlier representa-

tion that it had been unable to obtain a bond. On this basis, Security refused to make payment under the requisition to Maietta, believing it was necessary for its own protection to hold back funds in the event of a default. Efforts to resolve the differences were unavailing and Security ordered Maietta off the job. A subsequent arbitration ruling held that in so doing, Security had breached the contract and it was required to pay substantial damages to Maietta.

Security then commenced this action against Pennsylvania, not on the bond, but "upon its contention that the relationship of [Pennsylvania] as a surety and [Security] as obligee gave rise to a duty on the part of [Pennsylvania] to respond to [Security's] request that it be furnished with the executed bond as set forth in [Security's] response to the 'General Form Status Inquiry'." (Plaintiff's Brief p. 2) Security says that had Pennsylvania seen to it that Security received a copy of the surety bond in response to Security's request of 9 April 1971, then Security would never have become involved in the imbroglio with Maietta toward the latter part of that month. Security says that if it had had the assurance of the surety bond, it would not have felt the necessity of holding back on the April requisition and as a consequence would not have breached the contract or suffered the damages required by the arbitration decision.

Security admits that the cause of action is unique. It relies primarily upon *Contee Sand and Gravel Company v. Reliance Insurance Company*, 209 Va. 672, 166 S.E.2d 290 (1969). In that case, Contee filed an action upon a labor and material payment bond against Reliance. Reliance defended on the ground that the bond contained a condition that no suit or action should be commenced by a claimant after the expiration of one year following the date on which the principal ceased work. Admittedly, more than one year had elapsed between the date

on which the principal had ceased work on the contract and the date the action was brought by Contee against Reliance. Contee's delay in bringing the action, however, was explained by the fact that Contee had inquired of the principal, of the issuing local agent of Reliance, and of Reliance at its home office, as to whether a bond had been issued which would cover Contee's claim. From these timely and diligent inquiries Contee learned that no such bond had been issued.

Sometime later, Contee, in seeking other means of compensation, learned that his sources of information might have been mistaken. Contee again inquired of the local agent and at this time the local agent discovered he had been mistaken in answering the previous inquirty as had been the home office of Reliance. The agent acknowledged that a bond covering Contee's claim had indeed been issued. Reliance nevertheless refused to pay on the ground stated and litigation was instituted by Contee against Reliance.

The trial court sustained Reliance in its one-year defense but was reversed by the Supreme Court of Virginia on the grounds of equitable estoppel.

Security contends that the facts in *Contee* are "closely analogous" to the facts in its case and that therefore the results should be the same. The facts are not analogous and the result cannot be the same.

Although Maietta had concealed the issuance of a surety bond, the defendant Pennsylvania did not. To the contrary, by its inquiry of 30 March, almost a month before plaintiff's final dispute with Maietta arose, Pennsylvania disclosed to Security the existence of the surety bond. It is true that Pennsylvania never sent Security a copy of the bond and there is no indication that it otherwise effectively responded to Security's request. But, in truth, Security did not request Pennsylvania to send it a copy of the bond. The reasonable inference from the language of Security's request of 9 April was that Pennsylvania was being requested to ask Maietta to supply Security with the bond executed by Maietta as principal.

By asking for a copy of the surety bond, Security inferentially acknowledged its existence. It merely wanted to have its records complete by filing therein an executed copy. Indeed, a notation, not completely decipherable, on Pennsylvania's copy of Security's inquiry, indicates that Pennsylvania attempted to comply with Security's request that Maietta "supply" the executed bond to Security. The notation reads in part, "discuss comments with contractor."

The failure to disclose in *Contee* was clearly inadvertent. The disclosure in the instant case may have been inadvertent but it was a disclosure all the same. Despite this disclosure, Security claims that had Pennsylvania promptly forwarded a copy of the bond in response to its request of 9 April 1971 it never would have suffered the loss. The ready answer to this contention is that Security did not request Pennsylvania to forward a copy of the bond. Security asked Pennsylvania to "have" Maietta supply Security with the bond.

Even if Security's somewhat muddled language is deemed to be a request that Pennsylvania itself supply a copy of the bond, the Court cannot see how the outcome would be different. Security says it took its untoward action against Maietta because it did not know of the existence of the bond. Nowhere does Security specifically allege that it took its action because it did not have a copy of the bond, or the bond itself, in its actual possession. Indeed, an action based upon such a complaint would be approaching the frivolous. And this would be especially true when, even now, Security does not bring its action on the bond but instead upon Pennsylvania's negligent failure to respond to Security's request of 9 April 1971. Such an action could be brought without actual physical possession of the bond. Indeed,

the complaint in this case was so brought.

A rational difference in a plausible course of conduct by Security vis-a-vis Maietta based on physical possession of the bond, as opposed to knowledge of the existence of the bond, would be immeasurable. Rationally, its course of conduct would have been the same under both alternatives. Further, if the information contained in the "General Form Status Inquiry" of 30 March 1975 left any doubt in Security's mind as to the existence of the bond, and if that existence were so critical to its actions vis-a-vis Maietta, its haphazard and awkward effort to verify that existence hardly entitles it to recover from Pennsylvania on the basis of negligence.

Plaintiff admits that the question which it has posed to the Court in this case is unprecedented. Neither plaintiff nor defendant has found controlling authority, nor even closely analogous authority. Neither has the Court. The matter is before the Court on defendant's motion for summary judgment with the agreement of counsel for both parties that the matter should be submitted for decision upon affidavits and exhibits therewith. The only affidavits and exhibits filed were those on behalf of plaintiff. All the facts recited herein and the reasonable inferences therefrom are derived from plaintiff's own evidence. Even viewed as they must be viewed on a motion for summary judgment, it is clear that plaintiff cannot recover.

The only case which plaintiff cites in support of its contentions, *Contee Sand and Gravel Company v. Reliance Insurance Company, supra*, does not support its contentions. The clear and unmistakable implication of the "General Form Status Inquiry" of 30 March 1971 was that Reliance had issued a surety bond to Maietta with Security as obligee with respect to the Hagerstown project. Because its half-hearted efforts to obtain confirmation of this fact were to no avail, Security chose to ignore the fact that a surety bond had been issued and to conduct its negotiations with Maietta as if a surety bond had not been issued. Pennsylvania cannot be held legally liable for the consequences of Security's own anomalous actions. All the facts set forth in plaintiff's affidavits and exhibits, taken as true, clearly preclude any recovery on the part of plaintiff.

## ORDER

It appearing to the Court that there is no genuine issue as to any material fact, and that the defendant is entitled to judgment as a matter of law, summary judgment is granted to defendant for the reasons set forth in the hereinabove memorandum opinion.