### Ezekiel W. Edwards et al., Appellees, v. Alfred L. Hamilton et al., Appellants.

AGENCY—*when agent liable to account to principal.* While an agent may undoubtedly buy of his principal, or have an interest in the sale of property belonging to his principal, in such case the burden is upon the agent to show that the principal had knowledge not only of the fact that the agent was buying, or interested, but also of every material fact known to the agent which might affect the principal, and that having such knowledge such principal freely consented to the transaction. If the agent makes a secret profit on a transaction negotiated for his principal, his principal can compel him to account therefor.

*Assumpsit.* Appeal from the Circuit Court of Morgan county; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 15, 1912.

EDWARD D. HENRY, for appellants.

WALKER & WOODS and BELL & BURTON, for appellees.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is a suit in *assumpsit,* the declaration consisting of the common counts only. The issues were tried by the court without a jury, and resulted in a judgment in favor of the plaintiffs for $1,370. The controversy arises out of the following facts: The plaintiffs, who

resided at Carlinville, Illinois, had at some time prior
to 1908 given to the defendants a sixty days' agency
to sell their farm of 130 acres near Modesta, Illinois,
under which nothing was accomplished.  On Septem-
ber 25, 1908, the plaintiff, Ezekiel Edwards, agreed
with the defendant Hamilton that if the latter would
sell the farm for $105 an acre within sixty days, he
would allow him $1 per acre as commissions.  On
December 14th thereafter, Courtney met Edwards and
his wife at Virden, and introduced one Alsbury to
them as a prospective buyer for the farm.  Alsbury
offered to buy the farm at $15,000 provided he could
turn over property of the value of $2,500, in part
payment therefor.  Edwards refused this proposition,
stating that he wanted all cash.  Thereafter, on the
same day, an instrument in writing was executed by
the plaintiffs, but not by the defendants, which recited
that in consideration of one dollar in hand paid, the
plaintiffs would at any time before March 2, 1909, sell
and convey to the defendants the farm in question,
upon the receipt from them of $13,000; that such
agreement was made upon the express condition that
the defendants should pay to the plaintiffs the sum
of $1,000 within ten days from that date, which sum
should be credited upon said purchase price of $13,000,
and that a failure to make said $1,000 payment within
ten days from that date would render the agreement
null and void; that the plaintiffs should furnish the
defendants with an abstract of title to the premises
showing them to be possessed of a good merchantable
title thereto and allow them a reasonable time in
which to examine the same.  At the bottom of the
said instrument, is an assignment by Courtney to
Hamilton of his interest in the same.  On December
15, 1908, Alsbury entered into a contract with Hamil-
ton for the purchase of the property for $14,000;
$2,000 of the purchase price to be paid in cash and
the balance when a deed should be delivered on March

1, 1909. On December 18th, Hamilton, out of the cash payment made by Alsbury, paid to the plaintiffs the sum of $1,000 for which they signed a receipt endorsed upon the agreement heretofore referred to, and recited that the payment was the amount due on said agreement at that date, leaving a balance of $12,000 to be paid to them on or before March 2, 1909, and that in case the title to the lands described in the above contract proved defective and a certain sale of said lands to John C. Alsbury should fail on that account, said sum of $1,000 should be returned to said Hamilton. On January 4, 1909, at the request of Hamilton, the plaintiffs conveyed the farm to Alsbury by a deed, which recited the consideration to be $14,500. On January 6th Hamilton paid an additional $3,000 to the plaintiffs, and on March first the balance due, and the deed was delivered to Alsbury.

No propositions of law were presented to the trial judge. The only error assigned is that the finding and judgment were contrary to the evidence. The defendants contend that the evidence shows that they were in fact the real purchasers of the property in question, and that in selling the same at a profit to Alsbury, they violated no duty or obligation toward the plaintiffs; that their course in the matter was legitimate and proper; while the plaintiffs contend that the dealings and transactions were the result of a preconceived scheme upon the part of the defendants, while assuming to be acting in the interest of the plaintiffs, to acquire gains without assuming financial risk or responsibility. There is evidence to show that the plaintiff, Ezekiel Edwards, repeatedly told the defendants that he would sell the property for $13,000 only in case they could not get a better price, and that they as often assured him that $100 per acre was all they could get; that at the time the deed conveying the land to Alsbury was read to the plaintiffs, they inquired why the consideration in the deed was

$14,500 when they were only getting $13,000 for the farm, and that no explanation was made except the statement that it was immaterial what consideration was named in the deed. The evidence still further shows that the defendants were real estate dealers of many years' experience, one of them being an attorney at law; that the plaintiffs were both aged, and had but little experience in business affairs of the nature here involved; that Ezekiel Edwards was unable to read writing and could read print imperfectly only and with difficulty. The evidence still further tends to show that the defendants never invested any money in the transaction; that the cash payments they made to the plaintiffs, of $1,000 and $2,000 respectively, were from payments made to them by Alsbury.

It will be observed that while under the terms of the contract the plaintiffs bound themselves to sell at the price named, the defendants were not bound to purchase. The position of the defendants that they were the real purchasers of the property and were making a separate and independent sale and conveyance of the same to Alsbury is inconsistent with the receipt which they procured to be signed by the plaintiffs at the time of making the cash payment of $1,000 which recites that if the title to the land should prove defective and the sale of the same to Alsbury should fail on that account, the said sum of $1,000 should be returned to the defendant Hamilton. The defendants do not claim to have at any time disclosed to the plaintiffs the facts relative to their purchase and the sale by them to Alsbury, and the evidence shows that they did not. The statement made in a letter written on January 6, 1909, by the defendant Courtney to the plaintiffs, stating that they had finally got Mr. Alsbury to accept the deed, is inconsistent with any other view than that the defendants were acting as agents of the plaintiffs in the transaction.

We shall not attempt to further detail or discuss the evidence. It will suffice to say that the court was

fully warranted in finding that the relation of principal and agent existed between the parties at the time of the transaction in question. It is well settled that an agent must act with absolute good faith and candor toward his principal. He cannot by any secret shift, evasion or device speculate in the subject-matter of his sale or become the purchaser thereof, without a full and candid statement of the facts to his principal. Authority to an agent to sell at a stipulated figure does not amount to a contract to give him all that he sells for above that sum. It is still the duty of the agent to make the property bring the highest price that can be obtained, and account to his principal for the whole sum less his reasonable or agreed compensation. Kellogg v. Keeler, 27 Ill. App. 244; Kerfoot v. Hyman, 52 Ill. 512. While an agent may undoubtedly buy of his principal, or have an interest in the sale of property belonging to his principal, in such case the burden is upon the agent to show that the principal had knowledge not only of the fact that the agent was buying, or interested, but also of every material fact known to the agent which might affect the principal, and that having such knowledge such principal freely consented to the transaction. Tyler v. Sanborn, 128 Ill. 136. The evidence warrants the conclusion that the defendants, by devious methods, attempted to make and retain a secret profit on the plaintiff's property, which they had undertaken to sell. Such being the case, the law will compel them to account for the same. Helberg v. Nichol, 149 Ill. 249; Tyler v. Sanborn, *supra*. It cannot be said that the finding of the court in favor of the plaintiffs is clearly and manifestly against the weight of the evidence.

The judgment of the Circuit Court is affirmed.

*Affirmed.*