### Frank C. Topinka, Appellee, v. A. M. Wicena, Appellant.

#### Gen. No. 29,324.

BROKERS—*construction of contract with broker as to right to commissions.* An offer by the owner of real estate to a broker to sell the property for $14,000 "without commission" did not entitle the broker to all he could secure above that sum as commission, and if he procures a purchaser for more than that sum the owner is entitled to the full amount and the broker must look to the buyer for his commission.

Appeal by defendant from the Municipal Court of Chicago; the Hon. JOHN BEDENGER, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1924. Reversed. Opinion filed April 29, 1925.

BENJAMIN E. COHEN, for appellant.

JOSEPH Z. KLENHA and ABRAHAM GREENFIELD, for appellee; LOUIS M. MANTYNBAND, of counsel.

MR. JUSTICE THOMSON delivered the opinion of the court.

The plaintiff alleged in his statement of claim that he was a real estate broker and that on June 24, 1922, "the defendant employed plaintiff, as such broker, to secure a purchaser" for certain real estate owned by the defendant, for which the latter agreed to accept a net price of $14,000. The plaintiff further alleged that he did secure a purchaser who was ready, willing and able to buy the property, and agreed to purchase it for a consideration of $14,700, "and that said defendant agreed to pay plaintiff all of the consideration for said premises in excess of $14,000"; but that after he had secured a purchaser, the defendant refused to sell the premises, and therefore the plaintiff alleged there was due him from the defendant, as brokerage commission, the sum of $700. The defendant alleged in his affidavit of merits that he did not employ the plaintiff to sell his property or secure a purchaser for it, as claimed by the plaintiff. The issues were submitted to the court without a jury. The issues were found for the plaintiff and his damages fixed at $500, after which the judgment appealed from was entered. The plaintiff introduced in evidence a letter he had written the defendant, under date of June 23, 1922, reading as follows: "Please advise me by return mail the lowest price of your lots * * *. I have a number of inquiries for corners in this vicinity and as I understand that your lots are on the market, I desire to be in a position to submit them to prospective buyers and will endeavor to be of service to you in the sale of same." He also introduced a letter which the defendant sent in reply, under date of June 24, 1922, which is the date alleged by the plaintiff in his statement of claim as that on which the defendant entered into the alleged contract. In this letter the defendant wrote: "In answer to your letter of the 23rd, wish to state that the price of the four lots * * * is $14,000, up to April 30, 1923—without commission.

The same has been placed with several real estate dealers in your vicinity." The plaintiff further introduced in evidence a letter he wrote the defendant on July 6, 1922, referring to their previous correspondence and asking to be advised as to the least amount of cash the defendant would require in the event of a sale of his property at $14,000, and also as to whether the defendant would consider a lease or a sale of his lots separately. The evidence shows that the defendant answered the last question in the negative and stated that the least amount of cash he would accept on the deal would be $8,000.

It appears from the evidence in the record that the plaintiff found a man ready, willing and able to buy the defendant's property at a price of $14,700. This was in October. The plaintiff secured the signature of the purchaser to a contract of purchase and sale on October 12, 1922. Four days later the plaintiff wrote the defendant, confirming verbal advice apparently given earlier on the same day, to the effect that he had sold the defendant's property to the purchaser above referred to, whose name was Downey, and advising him further that the sale price was $14,700, "which contemplates the payment of a broker's commission of $700," yielding $14,000 net to the seller, of which $8,000 was to be cash and the balance in the form of a mortgage. In this letter the plaintiff went on to say: "This is in accordance with correspondence had with you recently in which you have quoted us the net price of $14,000, good until April 30, 1923."

The defendant testified that he replied to the letter from the plaintiff, last referred to, calling attention to the fact that he had written the plaintiff under date of September 26, advising him that his property was not for sale, "under previously given conditions" by reason of "change of circumstances" and he further testified to the sending of such a letter to the

plaintiff on that date. The plaintiff denied ever having received such a letter. There was further testimony by the plaintiff to the effect that sometime after he procured Downey as a purchaser and the defendant had refused to sell to him, the defendant had a talk with him about the matter and offered the plaintiff $1,000, "if I let him go out of that contract and will drop the matter." The defendant denied making any such proposition to the plaintiff, but he did testify that he ",offered him at that time $500 for straightening the matter. I told him that I hated to go to court if we could straighten the matter up privately," but that the plaintiff refused to settle.

Even though we disregard the letter of September 26, which the defendant claims he sent the plaintiff, we are of the opinion that the plaintiff is not entitled to recover the excess over $14,000 as a commission. By his letter of June 24, the defendant, in substance, listed his property with the plaintiff as a real estate broker, and the terms of that listing were to the effect that the property might be sold for $14,000, "without commissions." Thereupon, the plaintiff was empowered to act as the defendant's agent to procure a purchaser on those terms. As such agent he was bound, in everything he did, to act for the benefit of his principal, the defendant. If he procured a purchaser, at a price over that which had been named by the defendant, he was not entitled to receive that excess as a commission, in the absence of some further understanding between the parties, which would amount to such an agreement. The plaintiff seems to contend that such an understanding is implied by the terms of the defendant's letter of June 24. In our opinion, that is not the case. In support of the judgment appealed from, the plaintiff relies upon the case of *Carter v. Love*, 206 Ill. 310. That case is not in point, for there the agreement between the owner and his agent stipulated ex-

pressly that the agent was to be "entitled to a commission of all over $77 per acre," in case of a sale of the property involved. In the course of its opinion in that case the Supreme Court pointed out that the agent may not put himself in a position antagonistic to his principal, and if his principal states that his property is for sale at a given figure and the agent sells it for a higher price, the agent is bound to account to his principal for the excess, citing *Kerfoot v. Hyman,* 52 Ill. 512. The same rule was followed in *Kellogg v. Keeler,* 27 Ill. App. 244, where this court held that "authority to an agent to sell at a stipulated figure does not amount to a contract to give him all he sells for above that sum"; and again, in *Edwards v. Hamilton,* 168 Ill. App. 662, where this court again used the same language in the course of its opinion and added: "It is still the duty of the agent to make the property bring the highest price that can be obtained, and account to his principal for the whole sum less his reasonable or agreed compensation."

Following the rule as laid down in the cases above referred to if an owner states to a real estate broker that a given piece of property is for sale at $14,000, with a commission at a stated rate, and the agent procures a purchaser for a sum in excess of the price so stipulated, the owner will be entitled to such excess amount and will be liable to pay the agent the stipulated commission on that sum. If the owner has told the agent that his property is for sale at a stipulated price, and nothing is said about a commission and the agent procures a purchaser at a higher price, the owner will likewise be entitled to receive such higher price and he will be liable to pay the agent the usual and customary commission prevailing on such transactions, based upon the price at which the property is sold. Neither of these situations is presented by the facts involved here, where, upon

inquiry as to the owner's price, the agent was told that the price was $14,000, "without commissions." In our opinion, that may not be construed into an agreement, even implied, that the agent would be entitled to retain everything over $14,000, as a commission. Even after being advised to that effect by the owner, if the agent cared to work on the proposition and bring about a sale, and thus undertook to act as the owner's agent, he is bound to act for the owner's best interest and if he procures a purchaser who is willing to pay a price over that named by the owner, the latter is entitled to receive the price paid.

In our opinion, the words "$14,000—without commission" may not be construed to mean "$14,000—net." The words used by the owner in this case mean just what they say, namely, that the owner will not pay commissions. If the agent wishes to work on that sort of a proposition, his obligation to act for the best interest of his principal still obtains and if he gets a purchaser at a price over that named by the principal, the latter is entitled to receive it and the agent is obliged to arrange for any commission he may make on the transaction, with the buyer.

For the reasons stated the judgment of the municipal court is reversed.

*Judgment reversed.*

O'CONNOR, P. J., and TAYLOR, J., concur.