## THOMAS MERRYMAN

### v.

## URI DAVID.

1. AGENT — *his duties and rights.* An agent is bound to the utmost good faith towards his principal ; he has no right to realize a profit out of the fund intrusted to him.

2. So, where an agent is authorized to sell land of his principal, at a fixed price, if he sells it for a higher price, he must account to his principal for the excess.

3. But, in the absence of fraud, he is not answerable to the purchaser of the land for such excess.

4. FRAUD — *misrepresentation.* Where one who has been negotiating for the purchase of land from the owner, before having consummated his contract of purchase, falsely represents to another that he is agent for the owner, and sells the land at a higher price than he knows he can buy it for, and thereafter does obtain title and conveys to his vendee, his misrepresentation about his agency does not constitute a fraud upon his vendee.

APPEAL from the Circuit Court of Mercer county; the Hon. CHARLES B. LAWRENCE, Judge, presiding.

In July, 1856, Uri David, being desirous of purchasing lands in Mercer county, inquired of Merryman about lands in his neighborhood. Merryman showed him a certain tract of land which was then owned by one Gregg, who resided in Ohio, Merryman representing to David either that he had purchased the land or was a kind of agent for the owner, and proposed to sell it to him at eight dollars per acre, amounting to $1,920. David thereupon contracted to purchase the land from Merryman at the price mentioned. In the August following, Merryman executed a deed to David for the land, with the understanding that another deed should be given in lieu of that, when Merryman should get a deed from Gregg. David at that time paid Merryman $590 in cash, gave his note for $40, payable in a few days, and two notes for $140, each, with interest at ten per cent., one due September 1, 1856, and the other, September 1, 1857; and assumed to pay

the sum of $1,000, to Gregg, to secure which Merryman told David he would have to give a mortgage to Gregg when he obtained a conveyance from him.

It seems that Merryman was not, in fact, the agent of Gregg in the sale of the land, but, previously to his sale to David, had been negotiating with Gregg for the purchase of it. Gregg had offered to sell the land to Merryman at $1,500, provided he accepted the proposition within a specified time. That time had elapsed before Merryman bargained the premises to David, but on the 15th of August, and soon after the conveyance mentioned to David, Merryman procured a deed from Gregg, and executed a mortgage on the premises to him, to secure the sum of $1,000, the balance of $1,500 for which he had purchased.

On the 29th of August, Merryman informed David that he had obtained a deed from Gregg, and desired then to take up the deed he had given him, and execute another, so that the conveyance to David might bear date subsequent to that from Gregg to Merryman. Merryman also requested David to give two other notes for $140 each, in lieu of the two of that amount he had previously given. David accordingly gave up the deed he had received from Merryman, and executed two notes for $140 each, bearing date on the 29th of August, 1856, in lieu of those of the same amount he had formerly given him, and received a new deed from Merryman for the land, bearing the same date of the last notes.

Subsequently to this transaction, David paid the mortgage debt of $1,000, to Gregg, and the note of $40, and also the sum of $135, upon the $140 notes. In the meantime, David had expressed his entire satisfaction with his purchase, saying that the land was worth thirteen dollars per acre, and he would have given ten dollars instead of the price at which he purchased, if he could not have obtained the land for less; and also expressed the belief that Merryman had made something by the transaction, and he hoped he had.

Finally, however, David refused to pay the balance of the purchase-money, and thereupon Merryman instituted suit to recover the balance due on the two $140 notes.

Upon this state of facts, David exhibited his bill in chancery in the court below, against Merryman, asking that Merryman be enjoined from prosecuting his suit upon the notes, and insisting that by reason of the misrepresentations of Merryman in regard to his relations towards Gregg respecting the land, a fraud had been perpetrated upon him, and that, therefore, Merryman ought to refund to him the excess that he had paid him over the price which had been paid to Gregg for the land.

An injunction was granted, which on the final hearing was made perpetual, and the Circuit Court decreed that Merryman stand charged as trustee for David, in the sum of $363.45. From that decree Merryman prosecuted this appeal, and assigns for error, that the court found the equities in the case in favor of the complainant.

Mr. B. C. Cook, for the appellant.

Messrs. B. F. Burnett & Son, and W. C. Goudy, for the appellee.

Mr. Justice Walker delivered the opinion of the Court.

It appears from the evidence in this case, that appellant, previous to the sale of the lands to appellee, had been corresponding with Gregg for its purchase, and had the right to purchase on the terms proposed by Gregg, within a given time. But that time had expired, and there is no evidence that appellant had accepted the offer. It also appears, that he represented that he had purchased the land, or was acting as a kind of agent for the owner. He said to the sons of appellee, that he was getting the same price which he gave for the land. He fairly represented that the title was in Gregg, and informed the sons of appellee that when he obtained the title it would be subject to a mortgage of one thousand dollars, and it seems that appellee agreed to pay it, which he afterwards did. He also requested them, when he

delivered the first deed, that it should be returned to be can-
celed, and another given when he obtained a deed from the
owner, which was afterwards done, and appellee's notes were
given up and new ones substituted. Appellant assigned as a
reason that it would not look well for his deed to appear on
record prior in date to the deed to him from the owner.

Appellee, at various times, and to different persons, expressed
himself as well satisfied with the purchase. He said the land
was worth thirteen dollars per acre, and that if appellant had
asked ten, he would have given it, instead of eight dollars per
acre. He said to different persons, that he supposed appellant
had made something on the purchase, and he hoped appellant
had. That he was satisfied with the purchase. He went on
and paid all of his notes to appellant, but one hundred and
forty-five dollars, after the purchase. His expressions of
satisfaction with his purchase, and the supposition that appel-
lant had made a speculation, were all after he purchased,
some of them as late as the spring following. There is no
evidence that the land was not worth thirteen dollars an
acre, as stated by appellee.

It seems that appellant at no time proposed to act as
appellee's agent in the purchase. If he professed to act as
the agent of any one, it was Gregg. It does not appear from
the evidence that appellant ever told appellee that he was
selling to him at the same at which he purchased. Nor does
it appear that either of appellee's sons informed him that
appellant had so stated to them. Appellee, instead of sup-
posing he was getting the lands at the same price, declared
that he thought appellant would make something, and even
hoped he would. This seems to repel all presumption, that
he expected or believed that he was to have the lands at the
same that appellant gave for them. It also clearly shows
that appellee did not regard appellant as his agent in the
purchase. It is true that Mirrilla David testifies, that her
father thought appellant was Gregg's agent, and was getting
the lands the same as if the deed had been directly from
Gregg to him. But when this evidence is taken in connection

Merryman *v.* David.

with appellee's declaration, it would seem that these declarations only related to the title and not the price.

It seems, then, that the only thing in which appellee was misled, was as to appellant being Gregg's agent. Has he any interest in the relation that appellant occupied to Gregg? Appellant having assumed to be Gregg's agent, if recognized as such, had no right to speculate upon his principal. He was bound to the utmost good faith to his principal, and had no right to realize a profit off of the fund with which he was acting. Having received more than he accounted for to his principal, if he was an agent, he would be liable to his principal to refund the amount retained, beyond his compensation. But the rights, duties and liabilities of an agent do not attach to other persons than the principal. And in this case it is not claimed that appellant was the agent of appellee. Nor can appellant be liable to him as an agent. If appellant has acted in bad faith with his principal, it does not concern appellee.

He has acquired all that he purchased. Nor is there any pretense that he was deceived as to the quality or value of the lands, or the title. There was no misrepresentation made as to quality, quantity or value of the land. Appellee purchased at a price he was willing to give, and he seems to have been well satisfied with the transaction. And we are unable to perceive that he has sustained any injury. Had appellant been his agent, it would no doubt have been different. If any fraud was committed, it was upon the owner, and not upon appellee as a purchaser. We are aware of no principle of law or morals, that would render appellant liable to appellee in this transaction.

The decree of the court must be reversed.

*Decree reversed.*