SAMUEL H. KERFOOT *et al.*

*v.*

ROBERT W. HYMAN.

1. AGENT—*as a purchaser.* An agent employed to sell land, can not himself become the purchaser.

2. SAME—*can not profit from the subject of his agency.* Where an agent is authorized to sell land at a fixed price, and sells it for a greater price, he must account to his principal for the excess.

3. So, where an agent, who was authorized to sell a tract of land at a given price, sold a portion of it for a larger sum, and placed the legal title to the residue in a third person for his benefit, a court of chancery decreed, properly, that the agent should account to his principal for the excess received for the portion sold, and that the legal title to the residue of the land not sold, should be released to him.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

This was a suit in chancery, brought by Robert W. Hyman against Samuel H. Kerfoot, Samuel Gehr and John C. Rives, to rescind a sale of real estate and compel the payment of money which, it is alleged, Kerfoot received while acting as the agent of the complainant. The bill alleges that complainant, being the owner of certain tracts of land in the city of Chicago, employed Kerfoot, a real estate broker, to sell the same for the sum of $6500, and afterwards, on payment of the price agreed upon, less commission, $232.90, executed and delivered to Kerfoot a deed to the premises, leaving a blank for the name of the purchaser; that Kerfoot had, at the time the deed was executed, sold a portion of the lands to John C. Rives for the sum of $6500; and that, with the intention of cheating and defrauding complainant, he combined and confederated with defendant Gehr, inserting the name of Gehr in the deed as grantee; that Gehr executed a deed to Rives for a portion of the premises, in consideration of the sum of $6500, paid by Rives to Kerfoot for the same; and that the legal title to the remaining portion of the lands, remained in Gehr. Kerfoot claims, in his answer, to have purchased the lands of Hyman for the sum of $6500, less a bonus of $232.90, and that Hyman delivered to him a deed for the same with the name of Gehr as grantee; and that the only reason Gehr was named as grantee, was because Kerfoot was embarrassed, and could not safely hold property in his own name, without its being sold under execution; and denies that he in any way or manner acted as the agent of Hyman in the sale of the land. The

court below rendered a decree dismissing the bill as to Rives, and directing that Gehr reconvey to Hyman the portion of the lands to which he still held the title, that Kerfoot pay to Hyman $249, and that Kerfoot and Gehr pay the costs of suit. To reverse this decree defendants appealed.

Mr. JOHN J. McKINNON, for the appellants.

Messrs. KING, SCOTT & PAYSON, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The only question presented by this record is, as stated by appellants, in what capacity did Kerfoot act in the transaction? Was he the agent of appellee, or was he a principal, acting for himself?

Both Hyman and Kerfoot testified in the cause, and they are in direct conflict, but Hyman is sustained by LeMoyne, a party wholly disinterested, who corroborates appellee in every essential particular.

Appellants admit this testimony makes out the case stated in the bill, and as that is framed on the basis of an agency in Kerfoot, that ends the case. It is well settled, an agent employed to sell land, can not himself become the purchaser, and he is held to the strictest fairness and integrity, and bound to act in the utmost good faith; so that, if he is authorized to sell land at a fixed price, and sells it for a greater price, he must account to his principal for the excess. *Merryman* v. *David*, 31 Ill. 404. This rule is so well established, reference to authority is unnecessary.

Appellants insist, inasmuch as appellee and LeMoyne both testified there was no written agreement between these parties, and as there was a writing in evidence signed by appellee, that writing was an agreement and the record showing its existence, that fact should weaken their testimony or tend to their discredit. The writing in evidence, was a memorandum

only, signed by appellee, of the price he would take for the property, and a figuring of his own, made in the margin, of the net proceeds after deducting the commission to be paid to Kerfoot. It contains nothing more than a description of the lands, and the sum the owner was willing to take for them. Surely, Kerfoot was not bound by it, to take the lands at those terms, nor did he agree so to do. He informed appellee he was in negotiation with a party in the east, who he had no doubt would purchase, and wanted the price definitely stated, and he distinctly stated, he was acting for the owner in the sale, and would look to him for his commission. In truth, he was acting in a double capacity, that of agent of the seller and of the purchaser. He was a real estate agent, whose business was buying and selling lots and lands for others.

The very form the transaction took, dissipates all idea of a sale to Kerfoot. If it was a sale to him, why should any commission or brokerage be stipulated? It may be true, "one man's money is as good as another's," and that Kerfoot had a right, in the first instance, to be the purchaser. Yet if he had been such purchaser, it is incredible, brokerage should be agreed upon.

But there is something more in support of appellee and Le-Moyne, and that is, the letters by Kerfoot to Mr. Rives and his in reply. Those letters can not be read without forcing the conviction that the sale of these lands was effected by Kerfoot as an agent. Nowhere, in any one of them, is there the slightest intimation that Kerfoot was the owner of the property or intended to be, or that it was under his control. Mr. Rives, judging from the tenor of his letters, knew Kerfoot was acting for other parties. The negotiation with him was on that basis alone.

It appears the lots and land, for which appellee agreed to take the net sum of $6316, contained fifteen acres. Kerfoot sold to Mr. Rives thirteen acres thereof, for $6500, and proposes to put in his own pocket the difference, and hold as

his own the remaining two acres unsold; the legal title to which he has passed to his co-appellant, Gehr.

This claim is so at war with justice, equity and fair dealing, and so contrary to well established principles, that it can not be listened to for a single moment.   A more distinctly marked case of agency rarely comes before a court of justice.   The evidence is conclusive, and the court below, in decreeing to appellee the difference between the sum he stipulated to take, if no more could be had, and the sum actually received by Kerfoot, and that his grantee, Gehr, should release to appellee all his right to the two acres, carried out the true principles which govern this case, and the decree is affirmed in all its parts.

*Decree affirmed.*