HARMAN v. MOSS AND OTHERS.

September 9, 1915.

1. PRINCIPAL AND AGENT—*Option to Buy—Price Fixed—Sale at Higher Price—Minimum Price.*—Under a contract between joint owners of land by which one gives to the other the right to buy or sell the timber on the land "at $10 per acre," if the grantee elects not to buy himself, but to sell to another, as soon as the right of election is exercised the relation of principal and agent becomes automatically fixed between the parties, and the "$10 per acre" named in the contract is to be regarded as the *minimum price* for which the agent is empowered to sell, and it is plainly his duty to procure for his principal the best price obtainable. If he sells for a higher price he must account to his principal for the excess.

2. BROKER'S COMMISSIONS—*Case in Judgment—Reference to Commissioner—Equity.*—Where the amount of the commission to be paid to an agent for the sale of land is not fixed by contract, but the record of a suit in chancery where the subject is involved indicates the existence of special circumstances affecting the character and quantum of services rendered by the agent in effecting the sale, which, if sustained, might take the claim to commissions out of the ordinary class of sales for which the customary commission of five *per cent.* is allowed, the cause should be referred to a commissioner in chancery to ascertain and report what would be a reasonable compensation for making the sale.

3. SPECIFIC PERFORMANCE—*Allegation and Proof—Equity—Case in Judgment.*—In suits for specific performance, the complainant, to entitle himself to relief, must allege and prove full compliance with the contract on his part, or, in a proper case, such acts of part performance that a refusal of full execution would place him in a situation which does not lie in compensation. He must allege the facts constituting performance or part performance, so that the court may judge of their sufficiency. In the case in judgment, the agreement sought to be specifically enforced is an optional contract in which time is the essence, and neither the pleadings nor the evidence shows compliance with any of its terms.

Appeal from a decree of the Circuit Court of Tazewell county. Decree for the complainants. Defendant appeals.

*Amended and Affirmed.*

The opinion states the case.

*Henry, Graham & Hawthorne* and *S. M. B. Coulling,* for the appellant.

*Henson & Brown,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

We shall confine our consideration of this case to the essential issues presented by appellees' original bill and appellants' cross-bill without noticing subordinate and collateral matters which can exercise no controlling influence on the result of the litigation.

1. Appellee, Virginia A. Moss, is one of nine heirs, who inherited from their father, D. G. Sayers, deceased, a tract of 5,600 acres of coal and timber land lying in McDowell county, West Virginia. Appellee afterwards intermarried with W. G. Moss, and she and her husband purchased another share in the estate. Appellant, W. G. Harman, married one of the daughters of D. G. Sayers, and also acquired by purchase the undivided interest of another heir. On January 22, 1907, Virginia A. Moss and seven of the other heirs, who together with W. G. Harman and wife represented seven-ninths of the entire tract of land, executed an optional agreement whereby for the consideration of one hundred dollars they granted to appellant alternative privileges as follows: (a) The right and privilege of buying or selling the land at the price of $25.00 per acre; and (b), the right and privilege (in the event the grantee should

not buy or sell the land under clause a) to buy or sell the timber on the land at $10 per acre. Should a sale either of the land or timber be made, the agreement provided for the execution of a deed by the owners to the purchaser with special warranty. The agreement also contained other stipulations which have no material bearing upon this branch of the controversy.

On November 10, 1909, Harman made sale of seven-ninths of the timber to the W. M. Ritter Lumber Company, Incorporated, at $20.00 per acre, the entire purchase price aggregating $49,000. This agreement was reduced to writing and executed by Harman and wife and the lumber company, but was not admitted to record. Another agreement was contemporaneously executed by the parties by which a sixty days' option was granted to the lumber company to purchase the undivided seven-ninths interest in the timber "upon the terms and conditions which are fully set forth in another agreement between the parties hereto bearing even date herewith." This latter agreement, which it will be observed does not mention the purchase price of the timber, was promptly admitted to record.

On December 28, 1909, appellees united with Harman and wife in a deed by which they conveyed to the lumber company the timber previously sold. The deed varied the terms of the optional agreement in several particulars, noticeably in providing for general instead of special warranty to the extent of $19,000, the consideration recited in the deed instead of the true consideration of $49,000. This deed, too, was promptly recorded. It thus appears that of the three writings immediately bearing upon the sale, the two which conveyed no correct information concerning the price of the timber without delay were admitted to record, while the agreement which set out the real consideration was withheld.

Whatever may have been the object, the effect of this manipulation was to keep the appellees in ignorance of the price for which their property had been sold. Moreover, Harman induced appellants to unite in the deed upon the representation that he sold the timber for $10 per acre, which was the best price he could get, and was the amount that he and his wife were to receive.

In these circumstances the circuit court was of opinion that Harman was liable to the plaintiffs for the actual purchase price of the timber, less a commission of five *per cent.* for making the sale, and decreed accordingly. This ruling constitutes the first and chief error assigned.

The clause in the agreement of January 22, 1907, in relation to the sale of the timber is not difficult of interpretation. As a whole it involves two distinct propositions, controlled by wholly dissimilar principles. It invested appellant with the dual right either of electing to purchase the timber himself at the fixed price of $10 per acre, or to sell it at $10 per acre. If he had chosen to purchase, his right to do so and at the price named would have been unquestionable. But he declined the proposition to buy and elected to sell the timber under the alternative proposition, and forthwith the relation of principal and agent arose between him and appellees. It is obvious that when this right of election was exercised, the status of the parties automatically became fixed.

The second provision of the clause of the contract under consideration wrought no change of title to the timber. The title remained in appellees, and when Harman sold the timber, he was selling not his own but their property. The confusion of thought with respect to the interpretation of the second clause of the contract arises from a misconception of the governing principle of law applicable to the stipulation for the sale of the timber at $10 per acre, the contention of appellant being that by virtue thereof he

(not the owners) is entitled to receive all over $10 per acre for which the timber was sold, while the correct rule manifestly is the reverse of that stated. In the connection in which it occurs, the "$10.00 per acre" named in the contract is to be regarded as the *minimum price* for which the agent was empowered to sell, and it was plainly his duty to procure for his principals the best price obtainable.

The rule is thus stated in Fitch on Real Estate Agency, at p. 24, and Walker on Real Estate Agency, sec. 630: "As a result of the confidential relation existing between the parties, and the good faith required, if the agent, being authorized to sell land for his principal at a fixed price, sells it for a higher price, he must account to his principal for the excess." Citing *Bruce* v. *Davenport*, 36 Barb. [N. Y.] 349; *Merryman* v. *David*, 31 Ill. 404; *Kerfoot* v. *Hyman*, 52 Ill. 512; *Love* v. *Hoss*, 62 Ind. 255.

In *Kerfoot* v. *Hyman, supra,* which is analogous to the case in judgment, it was contended that Hyman in the first instance having informed Kerfoot, a real estate agent, what he would take for the land, Kerfoot had the right then and there to buy it, and that "one man's money is as good as anothers." But the court in overruling the contention, among other things, said: "That if he (the agent) is authorized to sell land at a fixed price and sells it for a greater price, he must account to his principal for the excess. This rule is so well established that reference to authority is unnecessary." To the same effect is *Merryman* v. *David*, 31 Ill. 404.

So, also, *Denson* v. *Stewart*, 15 La. Ann. 456, where the owner authorized a person to sell a slave for a fixed price, and he sold the slave for a much larger price and claimed the right to retain the excess for his compensation. The court said: "The right of the plaintiff to recover the whole price for which the defendant sold his slave, less commissions for selling, is too clear to admit of any doubt or argu-

ment. The specification of the price at $900.00 in the mandate to Stewart to sell the slave, was the minimum price for which he was authorized to sell, and did not entitle Stewart to retain or claim the balance of the price demanded in this suit."

The same principle is enunciated in 31 Cyc. 1436, 1470, where numerous authorities are cited in notes.

The decisions of none of the courts are more pronounced than those of this court in maintaining the integrity of the relations between principal and agent, or in condemning claims by the latter to concealed or undisclosed profits. Sec, *Central Land Co.* v. *Obenchain,* 92 Va. 130, 22 S. E. 876; *Jackson* v. *Pleasontcn,* 95 Va. 654, 29 S. E. 680; *Triplett* v. *Woodward's Admr.,* 98 Va. 187, 35 S. E. 455; *Jordan* v. *Annex Corporation,* 109 Va. 625, 64 S. E. 1050, 17 Ann. Cas. 267.

With respect to the matter of commissions (without intending to be understood as intimating an opinion as to what should be the final result), the record seems to indicate the existence of special circumstances affecting the character and *quantum* of services rendered by appellant in selling the timber in question, which if sustained may take the claim to commissions out of the ordinary class of sales for which the customary commission of five *per cent.* is allowed. For these reasons we are of opinion that the decree of the circuit court on the main question involved in the first assignment of error is plainly right; but that in the matter of commissions, there should be a reference to one of the commissioners in chancery to ascertain and report what would be a reasonable compensation to W. F. Harman for making the sale of the timber.

The remaining error assigned involves the court's action in dismissing the cross-bill.

That bill seeks specific performance of an agreement between Moss and wife and Harman, dated May 27, 1908.

The agreement, so far as material to this controversy, provides that in consideration of one dollar and of the release of the first parties from all stipulations of the option contract of January 22, 1907, except with respect to their interest in the timber, they grant to Harman the privilege of purchasing from them, at any time between December, 1908, and January 22, 1910, an undivided interest in two tracts of land conveyed to them by C. G. Poe and wife. The price agreed to be paid by Harman was proportionally the same paid by the first parties to Poe and wife with interest, and also one-half of the taxes paid by them during their ownership of the property with interest. The agreement further stipulated that it was not to be construed as a waiver by Harman of his claim to a one-seventh undivided interest in the land therein mentioned, nor as an acknowledgment of said claim by the first parties.

The rule is well settled in this jurisdiction that in suits for specific performance, the plaintiff to entitle himself to relief must show, both by allegation and proof, full compliance with the terms of the contract on his part, or, in a proper case, such acts of part performance that a refusal of full execution would place him in a situation which does not lie in compensation. He must allege facts constituting performance or part performance, so that the court may judge of their sufficiency. *Kinchloe* v. *Bounds, post,* p. 735, 86 S. E. 110, in which an opinion has been handed down at the present term.

It will be observed that the agreement sought to be specifically enforced is an *optional contract in which time is the essence,* and neither the pleading nor evidence shows compliance with any of its terms.

Upon the whole case we are of opinion that the decree appealed from should be amended in the particular hereinbefore indicated, and as amended must be affirmed and the case remanded for further proceedings.

*Amended and Affirmed.*