## Richmond

CONTEE SAND AND GRAVEL COMPANY, INC. v. RELIANCE
INSURANCE COMPANY.

March 10, 1969.

Record No. 6841.

Present, All the Justices.

*William E. Baggs* (*Breeden, Howard & MacMillan*, on brief), for plaintiff in error.

*James L. Miller* (*Williams, Worrell, Kelly & Worthington*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Contee Sand and Gravel Company, Inc. filed its motion for judgment in the Circuit Court of the City of Norfolk against Reliance Insurance Company (successor to Standard Accident Insurance Company), seeking a judgment upon a labor and material payment bond issued by Standard on October 25, 1963, with Carter Contracting Company, Inc., as principal. The policy was incident to the performance of a contract whereby the Carter Company agreed to construct for Jeane Dixon and James L. Dixon a "7-Eleven" store at Laurel, Maryland.

Reliance filed its grounds of defense and a motion to dismiss upon the ground that the bond contained a condition that no suit or action shall be commenced by a claimant after the expiration of one year following the date on which the principal ceased work. Contee responded that it had sued Carter within the year, and further that Reliance was estopped by its conduct from availing itself of the condition of the bond. On June 1, 1967, the trial court sustained Reliance's motion to dismiss. Contee excepted and moved to set aside the order as contrary to the law and the evidence, which motion was overruled on July 25, 1967. We awarded Contee a writ of error.

The facts in this case are not in dispute. Contee, as subcontractor, performed work and furnished materials to Carter in connection with the construction of the store for the Dixons to the extent of $4160.49. Carter defaulted in the payment of the debt, and Contee employed William E. Baggs, a Norfolk attorney, to collect. Upon investigation it developed that Carter was financially involved and unable to pay. When inquiry was made of J. L. Carter, president of the Carter Company, on May 3, 1965, as to "what bond was on this job", he stated that he did not know, and referred the attorney to Littleton W. Parks of the Walke-Parks Insurance Corporation of Norfolk, who wrote all of his bonds.

On the same day Baggs called Parks and advised him that Contee was attempting to collect monies due it by Carter on the Dixon 7-Eleven job. Parks acknowledged writing bonds for Carter, checked his records and told Baggs that the only bond issued by his agency for this particular job was a "performance" type bond which did not inure to the benefit of materialmen.

Parks suggested that Baggs write to the home office of Reliance. This was done on May 3, 1965, and Baggs received a reply stating that the bond was a performance bond executed solely for the benefit of the Dixons, and no rights were granted to his client. Reliance denied it had any obligation to Contee.

On May 21, 1965, Baggs brought action for Contee against Carter and recovered default judgment in the amount of $4160.49 on July 7, 1965. Writ of *fieri facias* was issued on the judgment and returned "no effects". Baggs summoned J. L. Carter before a commissioner to answer questions concerning his property. At this hearing on May 10, 1966, Carter stated that it was useless for Contee to pursue his Company, and that Baggs should try the bonding company. When advised by Baggs that Parks had stated no labor and material pay-

ment bond had been issued, Carter told the attorney to check again.

Baggs called Parks, and the latter read the title and conditions of the bond he had written on the job. It then became obvious to Baggs that the bond described was in fact a labor and material payment bond. Baggs reminded Parks of their previous conversation and of his statement that the only bond issued on the job was a performance bond. He immediately went to Parks' office and conferred with him.

Parks wrote the home office of Reliance a letter of explanation on May 12, 1966. It appears that at the inception of the Dixon contract, Parks, as agent for Reliance's predecessor, Standard, had written and delivered a performance bond which was not accepted and was returned. Parks then wrote and delivered a labor and material payment bond but neglected to advise the company of the substitution. Parks stated that the girl in the office who usually attended to these things was sick at the time; that copies of the second bond were handled by another girl under his direction; and that, instead of being sent to the home office of the company, the copies were "stuck" in the file along with the performance bond which had been returned.

The testimony of Parks was that when he checked the file for Baggs on May 3, 1965 he noticed the original of the performance bond, but overlooked the copies of the labor and material payment bond which were in the file. He admitted that contrary to usual practice, the home office was never advised of the substituted bond until his letter of May 12, 1966.

Immediately after this development Baggs filed claim against Reliance on behalf of Contee. Payment again was refused, but this time for the reason that action had not been filed within one year following the date that Carter ceased work on the Dixon contract. Thereafter Contee instituted the case under review.

The principal issue before us is whether Parks, by his unequivocal statement to Baggs, induced the latter to believe that no labor and material payment bond covered the Dixon contract; also if Baggs had a right to, and did rely and act upon those statements.

The bond in question, although written to Carter as principal, with Standard as surety, and the Dixons and American National Bank of Maryland as obligees or owners, *was* for the use and benefit of claimants. It defined claimants "as one having a direct contract with the Principal or with a subcontractor of the Principal, for labor, material, or both, used or reasonably required for use in the per-

formance of the contract, . . ." Contee qualified as a claimant and was entitled to the protection which the bond afforded.

Contee, as a sub-contractor, dealt with Carter, the general contractor. When Carter defaulted in the payment of its debt to Contee, the attorney for the sub-contractor followed the usual and customary course of action. Baggs contacted all three persons having the greatest interest in this bond, and those who would have knowledge of it and its provisions: Carter, who was required to give the bond and pay the premium thereon; the insurance company that was surety thereon; and the local agent who wrote it.

Reliance is in no position to claim that possibly, if Baggs had written the Dixons or the American National Bank of Maryland, they might have told him of the bond. Contee had no dealings with these parties, and they were under no obligation to pay Contee's invoice or to give Baggs any information.

The attorney for Contee had a right to reply on a statement of fact made to him in a business transaction by the person in a position to know the facts. Neither is there a question but that Contee was prejudiced by the failure of Parks and Reliance to provide correct information. Admittedly, more than one year elapsed between the date on which Carter ceased work on the Dixon contract, and the date action was brought by Contee against Reliance. The delay in bringing action can be attributed directly to the lack of knowledge by Contee and Baggs of the existence of the bond. This was the fault of the agent and attorney in fact for Reliance. When Baggs first inquired on May 3, 1965 as to the existence of a bond, the only reason the bond was not discovered was that Parks failed to examine his file carefully, note its contents and to see what was there in the file to be seen. The company's copy and the agency's copy of the labor and material payment bond were in the file at that time.

The error made by Parks was further compounded in that his principal, Reliance, was never notified that the bond had been written and delivered. This failure was responsible for the denials by Reliance of the existence of the bond when inquiry was made of it by Baggs. The letter which Parks wrote to Reliance on May 12, 1966 immediately after he discovered his error, explains fully the entire transaction and how the oversight by him occurred. It contains the following pertinent and revealing paragraph:

"We see no letter in our file advising the Company of the substitution of bonds and it is apparent that we have been guilty of

a gross oversight. It would be normally our routine to return the original bond in a case like this and send copies of the substituted bond so that the Company's records would be in proper shape. While it is ridiculous to make excuses in a case of this kind, as a matter of explanation we would say that Mrs. Dennis who normally handles the routine of reporting bonds was out of our office sick for a couple of weeks at the time of the substitution and the clerk who handled this matter was not completely familiar with the routine. I must personally take full responsibility, however."

We are not concerned here with fraud. While the statement to Baggs by Parks, that there was no labor and material payment bond, was deliberately and knowingly made, it was not done with evil purpose, wrongful intent nor was it intentionally designed to mislead Baggs. The statement was correctly described by Parks as a "gross oversight", and his action in making it constituted negligence. It was a misleading and incorrect statement of fact made by a man who had actual knowledge of or ready access to the truth. It was given to an attorney who was lulled into inaction thereby, and who was misled to the injury and prejudice of his client.

We do not have here a statute of limitations but a contract provision which bars recovery from a surety on a bond after the expiration of one year following the date on which its principal ceased work on the covered contract. While the validity of such a condition in a bond is not questioned, a company will not be permitted to use or take advantage of its negligent and inexcusable mistake to bar a recovery thereunder. The company is estopped by the action of its agent from relying upon the one-year limitation provision and the noncompliance by Contee with this condition.

The principle of equitable estoppel has often been considered by this court. In *Heath, et al. v. Valentine, et al.*, 177 Va. 731, 737, 15 S. E. 2d 98, 100 (1941), we quoted from Justice Keith's opinion in *Chesapeake & O. R. Co.* v. *Walker*, 100 Va. 69, 40 S. E. 633, where and exhaustive review was made of the principle of equitable estoppel, the following paragraph:

" 'The general rule of equitable estoppel, or, as it is frequently called, estoppel *in pais*, is that when one person, by his statements, conduct, action, behavior, concealment, or even silence, has induced another, who has a right to rely upon those statements, etc., and who does rely upon them in good faith, to believe in

the existence of the state of facts with which they are compatible, and act upon that belief, the former will not be allowed to assert, as against the later [*sic*], the existence of a different state of facts from that indicated by his statements or conduct, if the latter has so far changed his position that he would be injured thereby.' 4 Amer. & Eng. Decs. in Eq. 258." See also 7 Mich. Jur., Estoppel, § 14, p. 260; 31 C. J. S. 2d, Estoppel, § 67, p. 402, § 70, p. 424; 28 Am. Jur. 2d, Estoppel and Waiver, § 27, pp. 627, 628, 629, § 41, p. 648, § 61, pp. 683, 684.

In *Mercantile Co-operative Bank* v. *Brown*, 96 Va. 614, 622, 32 S. E. 64, 66 (1899), is found the following statement:

"Actual knowledge of the truth as to the material facts, represented or concealed, is generally indispensable to the application of the doctrine of equitable estoppel, but like other general rules it has its exceptions. Actual knowledge is not indispensable where the circumstances are such that a knowledge of the truth is necessarily imputed to the party sought to be estopped; nor where he has been negligent in failing to perform some duty, whereby another has been misled to his injury or prejudice."

We hold that the negligence of the agent of Reliance in giving to the attorney for Contee incorrect and misleading information with respect to the bond caused the failure of Contee to bring appropriate action against Reliance within one year after Carter had completed work on the Dixon project. Accordingly Reliance is estopped as to Contee, under the circumstances of this case, to avail itself of the one-year provision in the labor and material payment bond involved here.

For the reasons assigned, the court erred in granting the appellee's motion to dismiss, and overruling appellant's motion to set aside. Therefore the judgment of the trial court is reversed, and this case is remanded to the court below with direction that it be reinstated on the docket for such further proceedings as may be indicated, consistent with this opinion.

*Reversed and remanded.*