# FEDERAL INSURANCE COMPANY

## V.

# STARR ELECTRIC COMPANY

Record No. 901589

November 8, 1991

Present: Carrico, C.J., Compton, Stephenson, Lacy, Hassell, and Keenan, JJ., and Poff, Senior Justice

460

*William A. Young, Jr. (John L. Walker; Williams, Mullen, Christian & Dobbins,* on briefs), for appellant.

*Steven D. Hedges (Randall W. Reavis; Patton, Boggs & Blow,* on brief), for appellee.

SENIOR JUSTICE POFF delivered the opinion of the Court.

The issues we consider in this appeal arise out of a dispute between two insurance carriers concerning a subcontractor's claim against a general contractor seeking payment for electrical work performed and materials supplied in a building renovation project.

In December 1986, the owner of the Cohen building entered into a renovation contract with Dixie Constructors, Inc. (Dixie). Corroon & Black of Ohio, Inc., an insurance agency, furnished Dixie's parent corporation an installation floater insurance policy

issued by Aetna Casualty and Surety Company (Aetna) listing Dixie as a named insured.

In a subcontract drafted by Dixie which incorporated the terms of the general contract and the conditions attached thereto, Dixie engaged Starr Electric Company, Inc. (Starr), to perform the electrical work and supply the materials required by the renovation project at a cost of $250,000. Dixie then obtained through Corroon & Black a performance bond and a payment bond issued by Federal Insurance Company (Federal). Starr was insured under its own installation floater policy and a property package policy issued 18 years earlier by Aetna and sold by Corroon & Black.

On January 13, 1987, during the course of the renovation, the Cohen building was destroyed by fire, and the project was abandoned. At that point, Starr had completed most of the work contemplated by the subcontract.

In response to a fire-damage claim filed by Dixie, Aetna refused coverage and filed a suit for declaratory judgment against Dixie, Corroon & Black, the owner, the project lender, and others. Aetna asked the court to declare that its policy with Dixie did not cover the Cohen project. The suit was compromised and settled out of court by the parties.

On April 10, 1987, three months after the fire, Starr asked Dixie for a copy of the payment bond, "if any". Dixie did not respond to Starr's request. Starr then filed a claim under its own policies with Aetna, and Aetna paid Starr $201,280.56 for loss of its work and the electrical materials and equipment consumed in the fire.

On April 4, 1988, Federal mailed Starr a copy of the payment bond. On May 20, 1988, more than a year after the fire, Aetna attached Federal's copy of the payment bond to a motion for judgment against Federal, Dixie's surety, seeking payment in Starr's name of $206,074.38, the balance due under the subcontract. Page two of that copy contained a clause limiting the right to file suit on the bond to two years.

A year later, on June 2, 1989, Federal learned for the first time that Corroon & Black had supplied it with an incorrect copy of the payment bond, and that page two of the original executed by the parties contained a clause limiting the right to file suit to one year. Federal so advised the court and opposing counsel, the court allowed the correct page to be substituted in the record, and Fed-

eral made a motion to amend its grounds of defense in order to assert the one-year time limitation defense.

The trial court ruled that such a defense must be pled specially, denied the motion to amend, and held that Federal was estopped to plead such a defense. Having considered the evidence stipulated by the parties, the court rejected Federal's several grounds of defense on the merits and entered judgment against Federal in the sum of $203,984.38. We granted Federal's petition for appeal.

## I. ESTOPPEL

In its first two assignments of error, Federal contends that the trial court erred "in ruling that the contractual limitations period had to be specially pleaded"; that the court erred "in denying Federal's motion for leave to amend" its grounds of defense to plead that defense; and that the court erred "in ruling that Federal is estopped from asserting the contractual one (1) year limitations period defense". Because we conclude that the court's estoppel ruling was correct, we do not reach the other two rulings.

On brief, Federal argues that the estoppel ruling was in error "because Federal acted reasonably and in good faith in discovering that the parties were litigating an incorrect copy of the payment bond." The delay in the discovery, Federal says, was due to the fact that its own bonding agent "had sent incorrect copies to both Federal and Dixie after the bond was executed." As soon as Federal discovered the error, it continues, it "gave notice . . . more than five (5) months prior to the previously scheduled trial date." That notice, Federal submits, "was . . . adequate" and, once the trial court had agreed to substitute the correct page for the erroneous page, the court should have allowed Federal to assert the limitations defense.

In essence, Federal contends that its good faith excuses its delay in discovering the error in its own contract document. In response, Starr argues that the record shows "a negligent course of dealing by Federal which amply supports the trial court's . . . finding that Federal . . . is barred and estopped from raising any limitation defense." We agree with Starr.

In *Contee Sand* v. *Reliance Ins.*, 209 Va. 672, 166 S.E.2d 290 (1969), a subcontractor sued a contractor's surety on a payment bond containing a time limitation clause like that in issue here. The evidence showed that the subcontractor, unable to collect from the contractor, had asked the surety's bonding agent whether

the contractor had acquired a payment bond. The agent reported that the contractor had a performance bond but no payment bond. More than a year later, the agent discovered that he had overlooked the payment bond which he found " 'stuck' in the file along with the performance bond" and that "the home office was never advised of the substituted [payment] bond". *Id.* at 674, 166 S.E.2d at 291-92. When the agent told the subcontractor of his mistake, the subcontractor filed its action against the surety. Invoking the one-year time limitation in the bond, the surety moved to dismiss, and the trial court granted the motion.

On appeal, we recognized that the agent's initial response to the subcontractor's inquiry was not an act of "fraud" or one "intentionally designed to mislead" but simply one that "constituted negligence." *Id.* at 676, 166 S.E.2d at 293. Yet, we said that the subcontractor "had a right to rely on a statement of fact made to him . . . by the person in a position to know the facts"; that the subcontractor "was prejudiced by the failure of [the agent] and [the surety] to provide correct information"; that "[t]he delay in bringing action can be attributed directly to the lack of knowledge by [the subcontractor] . . . of the existence of the bond"; and that "[t]his was the fault of the [surety's] agent". *Id.* at 675, 166 S.E.2d at 292.

Reversing the judgment below and remanding the case for further proceedings, we held that, because "the negligence of the agent of [the surety] . . . caused the failure of [the subcontractor] to bring appropriate action . . . [the surety] is estopped . . . to avail itself of the one-year provision in the labor and material payment bond involved here." *Id.* at 677, 166 S.E.2d at 293-94.

We think the principles applied in *Contee* apply in this case. The facts in the two cases are not dissimilar in any material respect. The conduct of Federal, its bonding agent, and its insured over a period of more than two years following the fire "constituted negligence." Federal was guilty of negligence in failing to investigate the conduct of its agents and, under the doctrine of *respondeat superior*, Federal is accountable to innocent third parties for the agents' negligence. *Jefferson Stand. Ins. Co.* v. *Hendrick*, 181 Va. 824, 834, 27 S.E.2d 198, 202 (1943). Federal's bonding agent sent incorrect copies of the bond to Federal (its "home office") and to Dixie. Dixie, Federal's insured, failed to respond to Starr's inquiry about a payment bond, an inquiry posed

three months after the fire. When a person under a duty to disclose facts within his knowledge makes no response to an inquiry posed by one entitled to know the facts, the response, for purposes of estoppel *in pais*, is a representation. *See Chesapeake & O.R. Co.* v. *Walker*, 100 Va. 69, 91-92, 40 S.E. 633, 641 (1902); *accord, Heath* v. *Valentine*, 177 Va. 731, 737-38, 15 S.E.2d 98, 100 (1941). Although Dixie's failure may have been merely innocent inaction, it was, in effect, a negative response, an implicit representation made by a "person in a position to know the facts".[1] Starr, which had not been a party to the payment bond, had a "right to rely" on such a response; Starr, unable to collect payment from Dixie and unaware during the year following the fire that it had a cause of action against a surety on a payment bond, "was prejudiced by the failure of [Federal and its agents] to provide correct information"; and "[Starr's] delay in bringing action can be attributed directly to the lack of knowledge by [the subcontractor]". *Contee*, 209 Va. at 675, 166 S.E.2d at 292.

■ Borrowing further from the language in *Contee*, we hold that, because the negligence of Federal and its agents caused Starr's failure to bring action within a year following the fire, Federal was estopped to invoke the contractual time limitation clause as a defense.

## II. SUBROGATION

■ Next, Federal contends that "the trial court erred in holding that Aetna . . . can assert a right of subrogation against Dixie." Federal relies upon a rule sometimes applied in other jurisdictions which, in Federal's language, holds that "no right of subrogation can arise in favor of an insurer against its own insured." Federal points out that Dixie was a named insured under an installation floater policy issued to Dixie's parent corporation by Aetna. Alternatively, Federal maintains that Dixie "is deemed a co-insured, additional insured, or an intended third party beneficiary under Starr's Aetna policy." The rule "is equally applicable," Federal says, "where the party suffering the loss and the

---

[1] "To establish equitable estoppel, it is not necessary to show actual fraud, but only that the person to be estopped has misled another to his prejudice or that the innocent party acted in reliance upon the conduct or misstatement by the person to be estopped. Elements necessary to establish equitable estoppel, absent a showing of fraud or deception, are a representation, reliance, a change of position, and detriment." *T. . . v. T. . .*, 216 Va. 872-73, 224 S.E.2d 148, 152 (1976) (citations omitted).

party causing the loss are not insured under the same policy but are, nonetheless, insured by the same insurer."

For purposes of this opinion only, we will accept the rule Federal urges. However, we find it inapplicable in this case.

Following the fire at the Cohen project, Dixie filed a claim under its installation floater policy with Aetna. Aetna denied coverage and filed suit for declaratory judgment against Dixie, Corroon & Black, the owner, the project lender, and others. Aetna asked the court "[t]o declare that the Policy does not provide 'Builders Risk' coverage for the Cohen project." The parties reached an extra-judicial settlement. The settlement agreement provided that Dixie was to receive $530,000 and the owner of the building and the project lender were to receive $1,170,000 from an escrow fund. Aetna had deposited $700,000 in that fund, and Corroon & Black (which had issued incorrect certificates of insurance) had deposited $1,000,000.

The agreement did not directly address Aetna's contention that the installation floater policy did not cover the Cohen project. Indirectly, however, it supported that contention when it provided that "Dixie . . . hereby releases AETNA and CORROON & BLACK . . . from any claims which have been or could be asserted . . . arising in any way from the fire at the Cohen Building and/or potential or actual insurance coverage for any aspect of the damages caused by that fire". Moreover, the agreement expressly provided that "Aetna does not release any party . . . with respect to the claims that it has arising through assignment, subrogation or otherwise from Starr".

Although, as Federal says, Dixie was named as an insured in the installation floater policy, at the time judgment was entered in the case at bar, Dixie no longer had an insurance claim under that policy, and Aetna, with Dixie's consent, had reserved its subrogation rights.

Yet, Federal insists that it was entitled to coverage as a co-insured under Starr's policy with Aetna. Federal invokes the rule applied in *Walker* v. *Vanderpool*, 225 Va. 266, 271, 302 S.E.2d 669, 672 (1983), that "where the plaintiff has contracted to protect the defendant from a loss by procuring insurance, the plaintiff (or his subrogee) may not recover for that loss from the defendant even if the loss is caused by the defendant's negligence."

Federal contends that Article 10 of the subcontract required Starr to procure and maintain fire insurance for the entire project[2] and that, as in *Walker*, this requirement was intended "for the benefit of *both* Dixie and Starr." Consequently, Federal believes, Dixie was an additional insured under Starr's Aetna policy within the meaning of the rule that an insurer cannot subrogate against its own insured.

Starr argues that the facts of record permit no finding of such intent. Its policy with Aetna was not one procured for the Cohen project but one it had carried for 18 years. In the interpretation of ambiguous language in a contract, the construction put upon it by the contracting parties is entitled to great weight in the courts. *Am. Realty v. Chase Manhattan*, 222 Va. 392, 403, 281 S.E.2d 825, 831 (1981). Introduced as an exhibit, that policy showed that, whenever Starr and Aetna had intended to add a third party to coverage, they had done so by written endorsement appended to the original document. With respect to the Cohen project, they had not done so.

■ Moreover, we agree with Starr that Dixie's claim to coverage under Starr's policy with Aetna falls within the classification of "claims which have been or could be asserted". As such, it was one of the claims Dixie released in its settlement agreement with Aetna. Accordingly, we hold that the rule in *Walker* does not apply here.

■ Because we conclude that Dixie was not an insured in either Aetna policy within the meaning of the rule Federal urges, we will uphold the trial court's ruling on the subrogation issue.

## III. ASSUMPTION OF RISK and WAIVER

Finally, Federal argues that, even if Aetna had the right to prosecute Starr's contractual claim against Dixie, the trial court erred in awarding damages to the plaintiff because "(A) Starr expressly assumed the risk of loss to all its work, labor, and materials involved in the project and (B) Starr waived any right to recover from Dixie." Federal refers to selective language in the

---

[2] Starr maintains that Federal's interpretation of Article 10, which makes no mention of fire insurance, is contradicted by Paragraph 11.3.1 of the General Conditions which states in part that, "[u]nless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire work . . . [which] shall insure against the perils of fire". Because we decide this issue on other grounds, we need not resolve this dispute over interpretation of the contract language.

subcontract and in the General Conditions to the general contract incorporated in the subcontract. We will assume, without deciding, that this language supports the interpretation Federal puts upon it.

At the time the Cohen building was destroyed by fire, Dixie had paid Starr only $21,150 of the $227,224.38 due under the subcontract. Hence, Dixie was in breach of its contractual obligation to pay past due installments in the total sum of $203,984.38.

"[I]n suits for specific performance, the plaintiff to entitle himself to relief must show . . . full compliance with the terms of the contract on his part . . . ." *Harman* v. *Moss*, 117 Va. 676, 682, 86 S.E. 111, 113 (1915). "The general rule is, that a court of equity will not specifically enforce a contract at the suit of a party who is himself in default in respect thereto, or has himself violated its terms and obligations." *Grubb* v. *Moore*, 108 Va. 72, 83, 60 S.E. 757, 761 (1908) (citations omitted). The rule in equity applies generally to actions at law for breach of contract. "The party who commits the first breach of a contract is not entitled to enforce it . . . ." *Hurley* v. *Bennett*, 163 Va. 241, 253, 176 S.E. 171, 175 (1934).

While we have held that this rule does not apply when the breach "did not 'go to the root of the contract' " but "only to a minor part of the consideration", *Neely* v. *White*, 177 Va. 358, 366, 14 S.E.2d 337, 340 (1941) (failure to pay $1,000 of $15,000 consideration), we think the rule in *Hurley* should apply here where the breach was failure to pay $203,984.38 of the $227,224.38 contract consideration. We hold, therefore, that Dixie, and derivatively Federal, cannot enforce either the assumption-of-risk clause or the waiver clause in the Dixie-Starr contract.[3] Accordingly, Dixie is liable to Starr under the payment clause of the subcontract, and Federal is liable to Starr under the payment bond.

---

[3] Invoking another clause in the subcontract, Federal argues that Dixie was not in breach of its contract with Starr at the time of the fire because the owner of the project had not paid Dixie three monthly installments due at that time. So far as appears from the record before us, Dixie never pled this defense, submitted it by stipulation, or otherwise raised it for consideration by the trial court, and we will not consider it for the first time on appeal. Rule 5:25.

Finding no merit in Federal's assignments of error, we will affirm the judgment entered below.

*Affirmed.*