Terry **JESSUP–MORGAN,** Plaintiff,

v.

**AMERICA ONLINE, INC.,** Defendant.

No. 98–70676.

United States District Court,
E.D. Michigan,
Southern Division.

July 23, 1998.

James Hafke, Hafke and Associates, Lansing, MI, for Plaintiff.

Leonard M. Niehoff, Butzel Long, Ann Arbor, Patrick J. Carome, John Payton, Samir C. Jain, Wilmer, Cutler & Pickering, Washington, DC, for Defendant, Randall J. Boe, Charles Curran, Dulles, VA, of counsel.

### OPINION AND ORDER

FEIKENS, District Judge.

#### I. BACKGROUND

In June, 1995 Phillip Morgan filed a suit for divorce from Barbara Smith–Morgan (now Barbara Smith) in the Oakland County Circuit Court in Michigan. That court granted the divorce in May 1996. Within weeks of the divorce judgment, Terry Jessup (Jessup) (now Terry Jessup–Morgan, plaintiff in this case), married Phillip Morgan.

Jessup and Phillip Morgan began a relationship some time prior to January 1996, while Phillip Morgan and Barbara Smith were still married. On January 11, 1996 Jessup (then an America Online (AOL) member) used her AOL account to post publicly on the Internet a message meant to harass and injure Barbara Smith. Jessup posted the message under the "screen name" (i.e., alias) of "Barbeeedol." The message read as follows:

Subject: * * * * * CALL ME
* * * * * *
From: barbeeedol@aol.com (Barbeeedol)
Date: 11 Jan 1996 15:01:36 –0500

Message–ID:
C4d3qb0$bb7@newsbf02.news.aol.comD

Call me . . . . . I'm single, lonely, horny and would love to have either phone sex or a[sic] in person sexual relationship. . . .

My name is Barbara and I'm a single white female looking for just about any kind of sex I can have with someone other than myself . . .

If you can help, call me at (810) 977–9476

The listed telephone number was the phone number of Barbara Smith's parents' home, with whom Barbara Smith and her two young children were residing pending resolution of the divorce suit. Jessup posted the message in an Internet usenet newsgroup entitled "alt.amazon-women.admirers," a public electronic bulletin board containing messages accessible to, and read by, a potential 40 million persons worldwide.

As intended by Jessup, posting this message resulted in persons Barbara Smith did not know calling her parents' home to request sexual liaisons with "Barbara." This gravely disturbed and distressed Barbara Smith and her parents. From the nature of the calls, and from the information callers supplied about how they obtained her parents' home phone number, Barbara Smith concluded that she was the intended target of the person(s) who posted a message on the Internet. Barbara Smith enlisted the aid of her brother, Kenton Smith, an experienced interactive computer services and Internet user. Kenton Smith was himself an AOL member at that time. He used a computer "search engine" to locate the posting of the offensive message on the Internet. He deduced from the posting's screen name and the "Message–ID" line that it was posted by another AOL member.

On January 12, 1996 Kenton Smith sent an e-mail message to AOL describing the posting and the calls to his parents' home. He asked AOL for information as to the identity of the person who posted the message. AOL reviewed Kenton Smith's complaint and the "Barbeeedol" message, and determined that the posting originated from Jessup's AOL account, which constituted an egregious breach of the AOL Member Agreement

signed by Jessup. AOL, therefore, terminated its contract with Jessup on February 2, 1996, and closed her AOL account. AOL's records list the grounds for this termination as "excessive USENET abuse." The same day, AOL sent Kenton Smith two messages. The first message explained that, for confidentiality reasons, AOL could not disclose information about actions it took against other AOL members. The second message explained that as a matter of AOL policy, information identifying the AOL member who posted the offensive message could only be released in response to a subpoena.

On February 16, 1996 Barbara Smith's divorce attorney, Kathleen M. Dilger, served AOL with a civil subpoena for information which would identify the AOL member who authored the injurious message. On February 23, 1996, in compliance with the subpoena, AOL sent to Dilger a two-page summary containing basic identity information on the AOL account from which the "Barbeeedol" message originated. The summary revealed that Jessup was the holder of the account.

Terry Jessup–Morgan now brings suit against AOL, claiming that AOL's compliance with the subpoena was unlawful, tortious, and a breach of contract. Specifically, Jessup alleges (1) that AOL's release of stored electronic information violated the Electronic Communication Privacy Act, 18 U.S.C. § 2707; (2) that AOL breached its contract with her, and its implied and express warranties; (3) that AOL's release of the information was negligent; (4) that AOL engaged in fraud and misrepresentation in its contract with her; (5) that AOL invaded her privacy and disclosed private facts about her; (6) that AOL violated the Michigan Consumer Protection Act; and (7) that AOL violated the Michigan Pricing and Advertising of Consumer Items Act. Jessup does not deny that she perpetrated the offense against Barbara Smith (by posting the fraudulent Internet message). However, she complains that AOL's disclosure that she committed the offense affected her child custody hearings, "her future husband's [Phillip Morgan's] di-

vorce hearing, and other personal matters." Jessup also complains that AOL's disclosure affected her "reputation in the community . . . and her reputation among her friends."

She requests various damages in excess of $47 million.

Defendant AOL moves that I(1) grant AOL judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) on Jessup's claim that AOL violated the Electronic Communication Privacy Act; (2) grant AOL summary judgment on Jessup's breach of contract and implied and express warranties claim; (3) grant AOL judgment on the pleadings on Jessup's negligence claim; (4) dismiss Jessup's fraud and misrepresentation claim pursuant to FED. R. CIV. P. 9(b); (5) grant AOL judgment on the pleadings or summary judgment on Jessup's invasion of privacy/disclosure of private facts claim; (6) dismiss Jessup's Michigan Consumer Protection Act claim; and (7) dismiss Jessup's Michigan Pricing and Advertising of Consumer Items Act claim.

## II. JURISDICTION

Jessup's claim raises a federal question issue under 18 U.S.C. § 2707. Thus, I have federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

## III. AOL MEMBER AGREEMENT

To obtain her AOL service, Jessup executed a Member Agreement (Agreement) with AOL. The Agreement is governed by the AOL Terms of Service (TOS) and the AOL Rules of the Road (ROR). The TOS provides for AOL or Member termination of their contract at any time. Terms of Service, § 9. The TOS provides that it is governed by the laws of the Commonwealth of Virginia, and by executing the Agreement Jessup and AOL agreed to submit to these laws. Terms of Service, § 10.[1]

The ROR provides that:

---

1. Because of federal question and supplemental jurisdiction, I apply either federal law or Virginia law as appropriate. Under the terms of the

Agreement, Jessup's Michigan state law claims are moot.

AOL Inc. does not disclose to private persons or companies information that identifies a Member's AOL screen name(s) with Member's actual name or other identity information, *unless required to do so by law or legal process served on AOL Inc. AOL Inc. reserves the right to make exceptions to this policy* of non-disclosure in exceptional circumstances (such as a suicide threat, or instances of suspected fraud) on a case by case basis and *at AOL's sole discretion.*

Rules of the Road, § 2.B(iv) (emphasis added).

By executing the Agreement, Jessup agreed to use her AOL account only for lawful purposes. The ROR specifically prohibits using AOL services to:

(1) harass, threaten, embarrass, or cause distress, unwanted attention or discomfort upon another Member or user of AOL or other person or entity,

(2) post or transmit sexually explicit images or other content which is deemed by AOL Inc. to be offensive,

(3) transmit any unlawful, harmful, threatening, abusive, harassing, defamatory, vulgar, obscene, hateful, ethnically or otherwise objectionable Content, . . .

(5) impersonate any person . . . or communicate under a false name or a name that you are not entitled or authorized to use, . . .

(10) intentionally or unintentionally violate any applicable local, state, national or international law, including but not limited to any regulations having the force of law.

Rules of the Road, § 2.C(a).

## IV. DISCUSSION

### 1. Violation of Electronic Communication Privacy Act claim.

 The prohibitions of the Electronic Communication Privacy Act (ECPA), 18 U.S.C. §§ 2701 *et seq.*, are inapplicable. The ECPA prohibits disclosure of the contents of an electronic communication to any person or entity (18 U.S.C. § 2702) or to the government (18 U.S.C. § 2703) without first meeting certain restrictions. 18 U.S.C. § 2711 states that the definitions in 18 U.S.C. § 2510

apply to the ECPA's provisions. 18 U.S.C. § 2510 states that " 'contents', when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication," [not information concerning the identity of the author of the communication]. 18 U.S.C. § 2510(8). The "content" of a communication is not at issue in this case. Disclosure of information identifying an AOL electronic communication account customer is at issue. In 18 U.S.C. § 2703(c)(1)(C) this identifying information is specifically acknowledged as separate from the "content" of electronic communications. The ECPA actually authorizes AOL's disclosure:

Except as provided in subparagraph (B), a provider of electronic communication service or remote computing service **may** disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by subsection (a) or (b) of this section) to any person **other than a governmental entity.**

18 U.S.C. § 2703(c)(1)(A) (emphasis added) (subsections (a) and (b) do not apply to the AOL disclosure). AOL made the disclosure, not to the public, but to a private individual, Barbara Smith's attorney, pursuant to a properly executed subpoena. Because the prohibitions of the ECPA do not apply to the AOL disclosure in this case, Jessup's claim that AOL violated the Electronic Communication Privacy Act fails, and AOL is entitled to dismissal of this claim because of her failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

### 2. Breach of contract and implied and express warranties claim.

 Jessup breached her contract with AOL, particularly section 2.C(a), by posting the message which invited third persons to seek sexual liaisons with Barbara Smith. Jessup's breach of the Agreement prior to any alleged breach of the same contract by AOL bars her claim against AOL for breach of contract and implied and express warranties. Under Virginia law, when the initial breach is substantial, the party who breaches

a contract first is barred from maintaining an action against another contracting party for its subsequent breach of, or failure to perform under, the contract. *Horton v. Horton,* 487 S.E.2d 200, 203–04 (Va.1997); *Federal Ins. Co. v. Starr Elec. Co.,* 242 Va. 459, 467–68, 410 S.E.2d 684, 688–89 (Va.1991). Here, Jessup's impersonation of Barbara Smith, and her posting of the message to harass and cause distress to Barbara, is certainly a substantial and material breach of the Agreement.

■ AOL did not breach the Agreement. According to the terms of the Agreement, AOL, at its discretion, could terminate a Member's account because the Member committed the acts Jessup did. AOL did so in this instance. In providing identifying information to Barbara Smith's lawyer pursuant to a civil subpoena, AOL complied with applicable law. The Agreement clearly provides for this compliance with proper legal process.

Jessup committed an egregious and intentionally harmful (to a third party) breach of the contract, and AOL acted responsibly in terminating her account and in providing information identifying her as the account holder that posted the harassing message on the Internet. Jessup provides no evidence that AOL breached any implied or express warranties. AOL is thus entitled to **summary judgment** on Jessup's breach of contract and implied and express warranties claim.

### 3. Negligence claim.

■ Under Virginia law, in a contract case a tort claim must rest on a breach of duty distinct from the breach of contract. *Foreign Mission Bd. of the S. Baptist Convention v. Wade,* 242 Va. 234, 240–41, 409 S.E.2d 144, 148 (1991). The duty Jessup claims AOL breached—not to release information identifying her as the author of the injurious message—is a contractual one. Therefore, Jessup's negligence claim must fail, and AOL is entitled to dismissal of this claim because she failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

### 4. Fraud, misrepresentation claim.

■ AOL is entitled to dismissal of this claim because Jessup failed to plead fraud and misrepresentation with particularity, as required by FED. R. CIV. P. 9(b). "[A] plaintiff must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984). Jessup did not meet these minimum requirements in stating her fraud/misrepresentation claim against AOL.

### 5. Invasion of privacy and disclosure of private facts claim.

■ Virginia law does not recognize the tort of invasion of privacy as alleged by Jessup (whether intrusion upon seclusion or disclosure of private facts). *Brown v. American Broad. Co., Inc.,* 704 F.2d 1296, 1302–03 (4th Cir.1983). Jessup's claim of invasion of privacy and disclosure of private facts fails, and AOL is entitled to dismissal of this claim because she failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

### 6. Violation of Michigan Consumer Protection Act claim, and

### 7. Violation of Michigan Pricing and Advertising of Consumer Items Act claim.

Because Michigan law is inapplicable, Jessup's claims under the Michigan Consumer Protection Act and the Michigan Pricing and Advertising of Consumer Items Act are moot. AOL is entitled to dismissal of these claims because of Jessup's failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

### CONCLUSION

For the reasons stated herein all of the above cited AOL motions are hereby GRANTED.

**IT IS SO ORDERED.**